Betty CARTER, Plaintiff-Appellant,

v.

Richard S. SCHWEIKER,* Secretary of Health and Human Services, Defendant-Appellee.

No. 1266, Docket 80–6361.

United States Court of Appeals, Second Circuit.

Argued April 23, 1981.

Decided May 28, 1981.

Betty Carter, pro se.

Ben Wiles, Asst. U. S. Atty., Brooklyn, N. Y. (Edward R. Korman, U. S. Atty., E. D. N. Y., Miles M. Tepper, Asst. U. S. Atty., Brooklyn, N. Y., on brief), for defendant-appellee.

Before OAKES and KEARSE, Circuit Judges, and POLLACK, District Judge.**

---

* Richard S. Schweiker has been substituted for Patricia Harris as defendant-appellee in this appeal pursuant to Fed.R.App.P. 43(c)(1).

** Honorable Milton Pollack of the United States District Court for the Southern District of New York, sitting by designation.

KEARSE, Circuit Judge:

Plaintiff Betty Carter, appearing pro se, appeals from a judgment of the United States District Court for the Eastern District of New York, Henry Bramwell, *Judge*, dismissing plaintiff's complaint for review of the denial by the defendant Secretary of Health and Human Services of plaintiff's application for disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–431 (1976). Although we conclude that the district court properly upheld the Secretary's denial of prospective benefits to plaintiff Carter for a seizure condition she now suffers, we believe that both the district court and the Secretary overlooked the possibility that Carter might be entitled to retroactive benefits for alcoholism, a condition she suffered in the past. A recent amendment of § 205(g) of the Social Security Act, Pub.L.No. 96–265, § 307, 94 Stat. 458 (1980) (to be codified at 42 U.S.C. § 405(g)) (hereinafter the "1980 amendment"), restricts the power of the federal courts to remand Social Security cases to the Secretary for evidentiary hearings of the type that would be necessary to determine Carter's entitlement to retroactive benefits. Accordingly, we vacate the judgment below and remand the matter to the district court so that it may determine, in the first instance, whether a further remand to the Secretary is justified under the standards of the 1980 amendment.

## I.

Carter's action has reached this Court through the usual multi-layered process of administrative and judicial review. Carter applied for disability benefits on January 11, 1979,[1] claiming that she was disabled by reason of alcoholism and a seizure disorder. After her application was denied, both initially and on reconsideration, she sought *de novo* review of her case before an administrative law judge ("ALJ"). At a hearing duly held on September 17, 1979, at which Carter was not represented by counsel, she

and a member of her household testified as to the nature and severity of her seizures, her work history, and her history of alcoholism. In a decision dated February 1, 1980, the ALJ concluded that Carter was not disabled within the meaning of the statute, finding that she suffered a "mild seizure disorder" that did not "significantly limit her ability to perform basic work-related functions." The Appeals Council subsequently declined to grant review of the ALJ's decision. Carter then commenced an action for judicial review of the Secretary's determination in the Eastern District of New York pursuant to 42 U.S.C. §§ 405(g), 1383(c). The district court granted judgment on the pleadings for the Secretary and dismissed Carter's complaint, ruling that the Secretary's determination that Carter's seizures were not disabling was supported by substantial evidence. This appeal followed.

The evidence placed before the ALJ was as follows. Plaintiff Carter is a 44 year-old woman who has completed two years of college. She worked as a travel agent for 15 years, until sometime in 1973; she has not worked since then save for a period of three weeks in 1977, when she was employed to do "home mailing."

From 1974 or 1975 until October 1978, Carter suffered from acute alcoholism. Before her first effort at detoxification, she consumed between a pint and a quart of scotch whisky or vodka each day. In February 1976, she participated in a detoxification program and remained sober for about six months. Thereafter, however, she began to drink again, consuming the same amounts of liquor as before. A second effort at detoxification in March 1977 also failed. In October 1978, however, Carter stopped drinking and entered the Alcoholic Rehabilitation Unit of the South Beach Psychiatric Center for a six-week period of treatment. She has remained sober since then.

1. The ALJ found, and the Secretary continues to assert in this appeal, that Carter first applied for benefits on April 24, 1979. This, however, was the date of Carter's application for reconsideration of the initial denial of benefits to her. The record clearly indicates that Carter's application for benefits was filed on January 11, 1979.

In addition to her alcoholism, Carter has suffered from seizures, of unknown origin, since December 1975. These seizures occur at irregular intervals, averaging perhaps ten occurrences in a three-month period. They usually last from three to five minutes, although Carter stated at the hearing that one recent seizure had lasted for 10 to 15 minutes. Carter feels faint for about 30 seconds before a seizure begins. During the seizures, she suffers paralysis of her right leg, feels "a tingling" in her right hand, sees stars, and apparently is quite helpless and disoriented. She does not lose consciousness, bite her tongue, or suffer convulsions. She sometimes remains disoriented for a period of several hours after a seizure. At the time of the hearing, Carter was taking Dilantin and other drugs to control the seizures, without notable success.[2]

None of the several physicians whose reports were before the ALJ was able to establish a satisfactory diagnosis for the seizures or to associate them with an identifiable physical abnormality. Although the medical reports prepared in conjunction with Carter's February 1976 and March 1977 treatments for alcoholism described the seizures as alcohol-related, they persisted after her successful detoxification in October 1978. Dr. Drucker, a psychiatrist who treated Carter for six weeks in connection with the October 1978 detoxification, described the seizures as "most probably emotional in origin" and "a defense supporting her alcoholic denial system." Dr. Finkel,[3] a neurologist who examined Carter for the Secretary in March 1979, diagnosed the seizures as "transient, ischemic attacks" and observed that they were "very bothersome to [Carter] and potentially very dangerous since they may portend an upcoming cerebral infarct." Repeated testing, including electroencephalograms, brain scans, CAT scans, and skull x-rays, revealed no significant neurological abnormalities.

Apart from the seizures, Carter enjoys reasonably good health. Repeated examinations indicated that her alcoholism had not irreparably damaged her gastro-intestinal system. Although Carter suffered hypertension in connection with her alcoholism, her blood pressure returned to normal once she stopped drinking. At the hearing before the ALJ, Carter testified that she is "strong," can perform normal household chores, can "stand up as long as any person can," and can walk half a mile, although her right foot sometimes "drags" and begins to tingle if she walks "for a long time." Carter also stated that she attends church regularly, visits friends occasionally, and performs normal household chores. Because of her seizures, she does not drive, although she has a valid driver's license. She is able to travel unaccompanied in her neighborhood, but never undertakes a longer trip alone.

The overall picture of Mrs. Carter that emerges from the administrative record is thus one of a lucid and reasonably vigorous woman who has now succeeded in combating a particularly insidious condition, alcoholism, but who remains deeply troubled by her unexplained seizures.

Appearing before us pro se in this appeal, Carter argues that there was not substantial evidence to support the ALJ's determination that her seizures are not disabling.[4]

2. Clarence Griffith, a member of Carter's household who testified before the ALJ, substantially corroborated Carter's testimony concerning her alcoholism and the nature of her seizures. Griffith also stated that, on average, Carter experienced the seizures at three week intervals and that her "overall condition" had remained "roughly the same" from December 1977 through the time of the hearing in September 1979.

3. Although Dr. Finkel's credentials were omitted from the record, Carter informs us that Dr. Finkel is a diplomate in neurology, is chief of neurology at Bronx Lebanon Hospital in Bronx, New York, and a member of the neurology staffs at Jewish Memorial Hospital and St. Elizabeth Hospital in Manhattan. At oral argument the Secretary stated that Carter's representations concerning Dr. Finkel's credentials were substantially correct.

4. Carter also challenges the determination of the Appeals Council, made in the course of denying her request for review of the ALJ's decision, that the ALJ had erred in finding that she was insured under the statute through the

We conclude that the ALJ's determination respecting Carter's seizures was supported by substantial evidence and must therefore be upheld. We believe, however, that the ALJ inadequately explored Carter's alcoholism as a possible cause of disability, and we therefore remand the case to the district court so that it may determine whether a remand to the Secretary for the taking of additional evidence concerning Carter's alcoholism is permissible under the 1980 amendment.

## II.

■ Under the Social Security Act, a person is disabled when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In addition, an individual's physical or mental impairment is not disabling under the Act unless it is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A). The burden of establishing disability is upon the claimant, 42 U.S.C. § 423(d)(5); *Aubeuf v. Schweiker*, 649 F.2d 107, 111 (2d Cir. 1981); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980), and § 205(g) of the Act, 42 U.S.C. § 405(g), provides that "the findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." Substantial evidence means

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938). *See, e. g., Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Bastien v. Califano*, 572 F.2d 908, 912 (2d Cir. 1978).

### A. *The Seizures*

The record contains substantial evidence to support the ALJ's determination that Carter's seizures were not disabling. None of the physicians who treated or examined Carter indicated that her seizures so severely restricted her ability to engage in "substantial gainful activity" as to be disabling. Dr. Drucker, a treating psychiatrist who observed Carter for six weeks, stated that the seizures "should not be that debilitating." Dr. Finkel, upon whose report Carter places primary reliance, described the seizures as "very bothersome" to Carter, but did not state or suggest that they were disabling.[5] The less extensive comments of other doctors who examined Carter are similarly devoid of any indication of disability, and the many different tests performed upon Carter failed to reveal any significant physical abnormality that might support a finding of disability. Nor do the seizures fall within any of the categories of neurological disorders recognized in the Secretary's regulations as potentially disabling. *See* 20 C.F.R. Subpart P, App. 1 §§ 11.00–11.19 (1980).

■ Finally, Carter's own testimony concerning her activities and overall physical

---

February 1, 1980 date of his decision, and that her insured status had expired on March 31, 1978. The determination of the Appeals Council was correct.

To be insured for disability under the Social Security Act with respect to a particular month, an individual must have "not less than twenty quarters of coverage during the forty-quarter period which ends with the quarter in which such month occurred." 42 U.S.C. § 423(c)(1)(B)(i). An individual's "coverage" for a particular quarter is based on earnings for that quarter and is determined in accordance with regulations prescribed by the Secretary,

20 C.F.R. §§ 404.103–404.107a (1980). Carter's earnings record shows that the latest forty-quarter period during which she had as many as twenty quarters of earnings began on April 1, 1968 and ended on March 31, 1978. She was therefore insured against disability only through March 31, 1978.

5. Dr. Finkel's observation that Carter's seizures are "*potentially* very dangerous since they *may* portend an upcoming cerebral infarct" (emphasis added) clearly does not represent an opinion that Carter was disabled at the time of the report.

capabilities strongly suggests that she would be able to perform her former work as a travel agent or to undertake other light or sedentary work where her occasional seizures would not endanger herself or others. Thus, although the inexplicability of Mrs. Carter's seizures is disturbing, the record contains substantial evidence to support the Secretary's determination that they were not disabling.

Accordingly, the district court correctly declined to disturb the Secretary's findings respecting Carter's seizures.

### B. *The Alcoholism*

Carter's claim of disability due to alcoholism presents more of a problem. Alcoholism, which is classified as a functional nonpsychotic disorder under the Secretary's regulations, is not a disabling condition unless accompanied by additional physical or mental impairment. 20 C.F.R. § 404.1517(d) (1980). The Secretary's regulations concerning nonpsychotic functional disorders specify that an individual generally will be found disabled if he or she manifests one or more clinical signs and experiences functional limitations as listed in the following regulation:

12.04 *Functional nonpsychotic disorders* (psychophysiologic, neurotic, and personality disorders: addictive dependence on alcohol or drugs). With both A and B:

A. Manifested persistence of one or more of the following clinical signs:

1. Demonstrable and persistent structural changes mediated through psychophysiological channels (e. g., duodenal ulcer); or

2. Recurrent and persistent periods of anxiety, with tension, apprehension, and interference with concentration and memory; or

3. Persistent depressive affect with insomnia, loss of weight, and suicidal preoccupations; or

4. Persistent phobic or obsessive ruminations with inappropriate, bizarre, or disruptive behavior; or

5. Persistent compulsive, ritualistic behavior; or

6. Persistent functional disturbance of vision, speech, hearing, or use of a limb with demonstrable structural or trophic changes; or

7. Persistent, deeply ingrained, maladaptive patterns of behavior manifested by either:

a. Seclusiveness or autistic thinking; or

b. Pathologically inappropriate suspiciousness or hostility;

B. Resulting persistence of marked restriction of daily activities and constrictions of interests and deterioration in personal habits and seriously impaired ability to relate to other people.

20 C.F.R. Subpart P, App. 1, § 12.04 (1980).

Carter is not now, and was not at the time of her application for benefits, addicted to alcohol, and thus is not entitled to future benefits based on a disability due to alcoholism. Nevertheless, she was an alcoholic until October 1978, and since she may have been disabled by alcoholism prior to that time she may be entitled to retroactive benefits for that condition. Section 223(b) of the Social Security Act, 42 U.S.C. § 423(b), provides in pertinent part:

An individual who would have been entitled to a disability insurance benefit for any month had he filed application therefor before the end of such month shall be entitled to such benefit for such month if such application is filed before the end of the twelfth month immediately succeeding such month.

Carter filed her application for benefits in January 1979, and thus would have been entitled to benefits for any of the twelve months preceding January 1979 in which she was disabled and met the other statutory requirements. Because Carter's insured status expired on March 31, 1978, she cannot receive benefits if her alcoholism had not become disabling on or before that date. If Carter had shown that during the first three months of 1978 she suffered functional and clinical disturbances as described in the regulations, and had shown, as required

by 42 U.S.C. § 423(d)(1)(A), that her disability had lasted, or could be expected to last, for a continuous period of not less than 12 months, the ALJ presumably would have concluded that she was entitled to a retroactive award of benefits for all or part of the period from January to October 1978.[6]

At the hearing, Carter presented little evidence concerning the effect of her alcoholism upon her ability to engage in substantial gainful activity. She stated the quantity of alcohol she ordinarily consumed and mentioned that she had occasionally experienced alcoholic "black outs," i. e., periods of continuous heavy drinking that the drinker is later unable to recall. The bulk of her evidence, however, concerned her seizures. Similarly, the ALJ gave very thorough consideration to Carter's seizures as a possible disability, but did not question her regarding the effects of her alcoholism on her ability to work and did not consider whether her alcoholism might have been disabling in the past, entitling her to retroactive benefits.[7] Hence the record concerning the effects of Carter's alcoholism may be incomplete.

Prior to the 1980 amendment of the Social Security Act, § 205(g) of the Act, 42 U.S.C. § 405(g), allowed a court reviewing a determination of the Secretary "to enter ... a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing," and further empowered the court "at any time, on good cause shown, [to] order additional evidence to be taken before the Secretary." The 1980 amendment, while preserving the first quoted provision, allowing entry of judgment with or without a remand, see Dousewicz v. Harris, 646 F.2d 771, 773 (2d Cir. 1981), substantially modified the court's power to remand for the taking of additional evidence. As

amended, section 205(g) now provides that the reviewing court "may at any time order additional evidence to be taken before the Secretary, *but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.*" Pub.L.No. 96–265, § 307, 94 Stat. 458 (1980); see 42 U.S.C.A. § 405(g) (1981 Supp.) (emphasis added).

As we have recently noted, the amendment "was at least in part designed to limit federal court remands to the Secretary." *Aubeuf v. Schweiker, supra,* 649 F.2d at 115. *See also* S.Rep.No. 96–408 96th Cong., 2d Sess. 58 (1979), *reprinted in* [1980] U.S.Code Cong. & Ad.News 1277, 1336. Although the amendment does not limit remands in cases where, for example, the Secretary has misapplied the law or has not provided a full and fair hearing, *see Aubeuf, supra,* 649 F.2d at 116; *Dousewicz, supra,* 646 F.2d at 773; H.R.Rep.No. 96–100, 96th Cong., 1st Sess. 13 (1979), it does affect our power to order a remand to the Secretary in cases such as this, where the sole purpose of the remand would be to afford the claimant an opportunuty to present additional evidence of disability.

█ As amended, § 205(g) permits an evidentiary remand only when the claimant shows (1) the existence of evidence which is (a) new and (b) material; and (2) the existence of good cause for the failure to produce the evidence in earlier proceedings. We are unable to determine, on the record before us, whether these statutory standards are met in the present case. The record does not indicate the nature of the evidence, if any, that Carter could produce concerning the effects of her alcoholism upon her ability to engage in substantial gainful activity during the relevant time

---

6. If the Secretary were to find that Carter became disabled by alcoholism before her insured status expired, application of the five-month "waiting period" requirement, see 42 U.S.C. §§ 423(a), (c)(2), would reduce the number of months for which she would receive benefits, unless she had become disabled 17 or more months before she applied for benefits in January 1979, see id. § 423(c)(2).

7. The ALJ noted that Carter's "abstinence from drinking has improved her overall ability to engage in normal daily functioning," but he did not purport to determine whether active drinking had impaired Carter's "normal daily functioning" to the point of disability during the relevant time period.

period.[8]  Similarly, we are unable to determine from the present record whether there was good cause for Carter's failure to introduce additional evidence concerning her alcoholism at the administrative level.[9] These related and primarily factual issues must be determined by the district court in the first instance.  Accordingly, we vacate the judgment below and remand the matter to the district court so that it may determine whether a remand to the Secretary for further evidentiary hearings is justified under § 205(g) as amended.

Vacated and remanded for further proceedings in accordance with this opinion. No costs.

---

8.  Carter has represented to us that her seizure condition has worsened during the course of these proceedings, but these representations do not shed additional light on the effects of her alcoholism during the period when she was insured against disability.

9.  Just as the fact that a claimant was not represented by counsel before the Secretary was insufficient, by itself, to justify a remand to the Secretary under § 205(g) as it existed prior to the 1980 amendment, *see, e. g., Livingston v. Califano*, 614 F.2d 342, 345 (3d Cir. 1980); *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979); *Reyes v. Harris*, 486 F.Supp. 1063 (S.D.N.Y.1980), so the lack of counsel, without more, will not establish "good cause" for a failure to introduce evidence within the meaning of § 205(g) as amended.