**Howard J. KEPPLER, Plaintiff,**

v.

**Margaret M. HECKLER, Defendant.**

**No. 83 Civ. 3947 (RJW).**

United States District Court,
S.D. New York.

May 24, 1984.

Tomkiel & Tomkiel, P.C., Yonkers, N.Y., for plaintiff; Stanley A. Tomkiel, III, Yonkers, N.Y., of counsel.

Rudolph W. Giuliani, U.S. Atty., S.D. of N.Y., New York City, for defendant; Paula A. Sweeney, New York City, of counsel.

## OPINION

ROBERT J. WARD, District Judge.

This is an action under section 205(g) of the Social Security Act (the "Act") as amended, 42 U.S.C. § 405(g) for judicial review of a final decision by the Secretary of Health and Human Services (the "Secretary") denying plaintiff's application for disability insurance benefits. The Secretary held that plaintiff has failed to demonstrate that he suffered from a disability within the meaning of the Act. Plaintiff has moved for summary judgment pursuant to Rule 56(a), Fed.R.Civ.P. For the reasons hereinafter stated, plaintiff's motion is granted.

## BACKGROUND

Plaintiff is currently forty-one years old. He has completed three years of college. From 1965 to 1980 he was employed as a police officer with the Yonkers Police Department. According to the administrative record, he has not worked since April 20, 1980, when he was injured in a motor vehicle accident.

Plaintiff first applied for disability insurance benefits on December 29, 1980, alleging that he had been disabled since April 20, 1980 because of a lower back injury. After his application was denied initially and on reconsideration, he filed a timely request for an administrative hearing. Such a hearing was held on July 23, 1981 before Administrative Law Judge Frederick Harap (the "ALJ"). In a decision dated September 9, 1981, the ALJ found that plaintiff was not under a disability as defined by the Act, and that he was not entitled to benefits. Thereafter, the Appeals Council remanded the case to the ALJ for the taking of additional medical evidence. By decision dated November 10,

1982, the ALJ, without an additional hearing, again denied plaintiff's application. This determination became the final decision of the Secretary on March 28, 1983, when it was adopted by the Appeals Council.

## DISCUSSION

The legal principles that govern the Court's decision on the instant motions are well settled. "Disability" is defined in the Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The mere presence of an impairment is not disabling within the meaning of the Act. Rather, a person may be determined to be under a disability only if his or her impairment is of such severity that the claimant is not only unable to do his or her previous work, but cannot engage in any kind of substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

The initial burden of proving disability is on the claimant. 42 U.S.C. § 423(d)(5); see *Schauer v. Schweiker,* 675 F.2d 55 (2d Cir. 1982); *Carter v. Schweiker,* 649 F.2d 937, 940 (2d Cir.1981); *Gold v. Secretary of HEW,* 463 F.2d 38, 41 (2d Cir.1972). The claimant satisfies this burden by making out a *prima facie* case, that is, by showing that his or her impairment prevents return to his or her prior employment, *Parker v. Harris,* 626 F.2d 225, 231 (2d Cir.1980); *Bastien v. Califano,* 572 F.2d 908, 912–13 (2d Cir.1978). The burden then shifts to the Secretary, who must produce evidence to show the existence of alternative substantial gainful work that exists in the national economy that the claimant could perform. *Parker v. Harris, supra,* 626 F.2d at 231; *Bastien v. Califano, supra,* 572 F.2d at 912–13.

In reaching a conclusion as to disability, both objective and subjective factors are to be considered. These include objective medical facts, diagnoses or medical opinions based on such facts, subjective evidence of pain or disability testified to by the claimant or other witnesses, and the claimant's educational background, age, and work experience. *Rivera v. Harris,* 623 F.2d 212, 216 (2d Cir.1980); *Bastien v. Califano, supra,* 572 F.2d at 912; *Gold v. Secretary of HEW, supra,* 463 F.2d at 41 n. 2. These factors need not be given equal weight. The expert opinion of the claimant's treating physician is entitled to particular weight, and "in the absence of substantial contradictory evidence, the opinion of the claimant's treating physician is binding on the Secretary." *Hankerson v. Harris,* 636 F.2d 893, 896 (2d Cir.1980); see *Donato v. Secretary of HHS,* 721 F.2d 414, 419 (2d Cir.1983); *Rivera v. Schweiker,* 717 F.2d 719, 723 (2d Cir.1983); *Eiden v. Secretary of HEW,* 616 F.2d 63, 64 (2d Cir.1980); *Alvarado v. Califano,* 605 F.2d 34, 35 (2d Cir.1979); *Bastien v. Califano, supra,* 572 F.2d at 912.

The Secretary has the duty of making the determination of disability under the principles set out above. It is not the function of this Court, which sits in the present context as a reviewing court, to determine *de novo* whether the claimant is disabled. Assuming the Secretary has applied proper legal principles, judicial review is limited to an assessment of whether the findings of fact are supported by substantial evidence. If they are so supported, they are conclusive. 42 U.S.C. § 405(g). *See Aponte v. Secretary of HHS,* 728 F.2d 588, 591 (2d Cir.1984); *Donato v. Secretary of HHS, supra,* 721 F.2d at 418; *Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982) (*per curiam*). Thus, absent legal error by the Secretary, her decision cannot be set aside if it is supported by substantial evidence. *Bluvband v. Heckler,* 730 F.2d 886, at 892 (2d Cir.1984); *Dumas v. Schweiker,* 712 F.2d 1545, 1550 (2d Cir.1983); *Aubeuf v. Schweiker,* 649 F.2d 107, 112 (2d Cir.1981); *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)). *See also Donato v. Secretary of HHS, supra,* 721 F.2d at 418; *Parker v. Harris,* 626 F.2d at 231–32.

Applying these principles to the instant case, the Court concludes that the decision of the Secretary that plaintiff is not disabled is not supported by substantial evidence, and must be reversed. The medical evidence in the record flatly contradicts the Secretary's determination that plaintiff retained the residual functional capacity for "sedentary work." In fact, the uncontradicted consensus among all the examining physicians who reported on plaintiff's residual functional capacity is that plaintiff cannot meet the physical exertional requirements for even "sedentary work."

■ In his decisions of both September 9, 1982 and November 9, 1981, the ALJ found that plaintiff "is unable to perform his past relevant work as a police officer." (Tr. 18, 33). This conclusion is overwhelmingly supported by the evidence, and is not challenged by either party in this action. This finding shifted the burden of proof to the Secretary to establish that plaintiff could perform some other form of substantial gainful activity. *See supra* at 3. In an effort to satisfy this burden, the Secretary offers the finding of the ALJ that plaintiff "has the residual functional capacity for at least sedentary work as defined in regulation 404.1567." (Tr. 18).

■ However, in the instant case, there is simply no evidence to support the conclusion that plaintiff could engage in sedentary work. Rather, the unrefuted medical evidence was overwhelmingly to the contrary. The physical · exertional requirements of jobs involving sedentary work are defined by the Secretary in accordance with

the criteria set forth in the *Dictionary of Occupational Titles* published by the Department of Labor, *see* 20 C.F.R. § 404.-1567. According to these criteria, a person must be able to sit for an extended period of time in order to be capable of performing sedentary work. As the courts have explained:

> The *Dictionary of Occupational Titles,* which is a generally accepted guide in gauging employment capability in these cases, states that sedentary work implies a capacity to sit for *at least* 6 hours in an eight hour work day.

*Tyler v. Weinberger,* 409 F.Supp. 776, 791 (E.D.Va.1976) (emphasis in original.) *See also Ferraris v. Heckler,* 728 F.2d 582, 587 & n. 3 (2d Cir.1984); *Smith v. Hecker,* No. 82–2470, slip op. at n. 3 (S.D.N.Y. March 22, 1983); *Minuto v. Secretary of HHS,* 525 F.Supp. 261, 265 (S.D.N.Y.1981); *Smith v. Schweiker,* 520 F.Supp. 27, 35 (D.N.H.1981); *Deutsch v. Harris,* 511 F.Supp. 244, 249 (S.D.N.Y.1981); *Moguez v. Harris,* 512 F.Supp. 11, 14 (D.Colo.1980).[1]

The relevant medical evidence in the instant case is contained in the reports of several doctors, including plaintiff's treating physician, Dr. T.A. Lansen, and two consultative physicians, Drs. S.K. Dutta and E.H. Bettmann, who examined plaintiff on behalf of the Social Security Administration. In a questionnaire concerning plaintiff's residual functional capacity, dated July 21, 1981, Dr. Lansen indicated that plaintiff did not have the capacity to walk, stand or sit continually for even a single hour. Moreover, Dr. Lansen advised, during an entire eight-hour workday, plaintiff could walk for a total of no more than one hour. He could stand for a total of two hours and sit for a total of only two hours. (Tr. 143). These conclusions lend support to the determination of Dr. Lansen in an earlier report that "as to the specific competent producing cause of [plaintiff's] disability, the patient has had multiple acci-

---

1. In a recent ruling, the Secretary also suggested that sedentary work generally will involve sitting for six hours out of an eight-hour workday. *See SSR 83–10, Titles II and XVI: Determining*

*Capability to do Other Work—The Medical-Vocational Rules of Appendix 2* 1A Unempl. Ins. Rep. (CCH) ¶ 14,531 at 1999–19. *See also Ferraris v. Heckler, supra,* 728 F.2d at 587, n. 3.

dents in the course of his work, any and all of which may be partially or fully responsible for his current status. However, I do feel he is permanently disabled...." (Tr. 132).

This testimony was buttressed by the determinations of Dr. Dutta who examined plaintiff at the behest of the Social Security Administration on October 6, 1981. Dr. Dutta completed a Residual Functional Capacities Evaluation in which he reported that, in terms of plaintiff's full capacity to work, in an eight hour workday plaintiff could sit for two hours and walk and stand for one hour, each. (Tr. 153). On April 20, 1982, plaintiff was again examined by a physician on behalf of the Social Security Administration. The examining doctor, Dr. Bettmann concluded that plaintiff "is not able to walk more than two blocks, stand only intermittently. He can sit for only two hours." (Tr. 166) He noted a guarded prognosis. *Id.*

The ALJ acknowledged the uncontroverted conclusions of all three doctors but disregarded them. He opined that "[t]he conclusions of the various physicians as to the claimant's residual functional capacity seem to be based more on the claimant's symptoms than on the objective findings and are given little weight in this determination." (Tr. 17). This conclusion is patently contrary to the well-settled principles governing disability benefits proceedings. As the Second Circuit recently explained: "It is well-established in this Circuit that '[t]he expert opinions of a treating physician as to the existence of a disability are binding on the fact finder unless contradicted by substantial evidence to the contrary.'" *Bluvband v. Heckler, supra,* at 892, quoting *Bastein v. Califano, supra,* 572 F.2d at 912. *See also De Leon v. Secretary of HHS,* 734 F.2d 930, at 938 (2d Cir. 1984) ("The cases in this Circuit are almost legion where the court has reversed administrative findings due to the factfind-

er's failure to give appropriate weight to the expert opinion of the treating physician."); *Donato v. Secretary of HHS, supra,* 721 F.2d at 419; *Rivera v. Schweiker, supra,* 717 F.2d at 723; *Parker v. Harris, supra,* 626 F.2d at 231; *Carroll v. Secretary of HHS,* 705 F.2d 638, 642 (2d Cir. 1983); *Eiden v. Secretary of HEW, supra,* 616 F.2d at 64, quoting *Alvarado v. Califano, supra,* 605 F.2d at 35; *Gold v. Secretary of HEW, supra,* 463 F.2d at 42. Moreover, it is equally well-established that there is no requirement that the physician's medical testimony "be supported by 'objective' clinical or laboratory findings." *Bluvband v. Heckler, supra,* at 893; *Eiden v. Secretary of HEW, supra,* 616 F.2d at 65 (quoting *Cutler v. Weinberger,* 516 F.2d 1282, 1287 (2d Cir.1975)).

Thus, in the instant case, the ALJ wrongly rejected the unrefuted medical evidence in the record that plaintiff did not retain the residual functional capacity for even sedentary work. The Secretary's failure both to accept the uncontradicted conclusions of the examining physicians and to heed the physical exertional requirements for sedentary work contained in the regulations and reinforced by case law deprives the decision of the Secretary of the requisite support by substantial evidence. That decision must be reversed.

■■■ The Secretary has advised this Court that one of the consultants who examined plaintiff did not receive the results of a computerized axial tomography ("CAT scan") performed on plaintiff by Dr. Joel J. Schwartzman in January 1982. *See* Tr. 163. The Secretary urges this Court not to reverse her decision denying benefits to plaintiff, but instead, to remand to the Secretary for appropriate action. The conditions under which such a remand may be ordered are set out in section 205(g) of the Act.[2] That section permits an evidentiary remand only when plaintiff demonstrates (1) the existence of new and material infor-

---

**2.** That section provides in pertinent part:
"The court ... may at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ..."

mation; and (2) good cause for failure to produce the evidence in earlier proceedings. *See, e.g., Carroll v. Secretary of HHS, supra,* 705 F.2d at 643–44; *Carter v. Schweiker, supra,* 649 F.2d at 942; *Aubeuf v. Schweiker, supra,* 649 F.2d at 115–116.

In the instant case, the Secretary has failed to meet either aspect of this statutory burden. The results of the CAT scan, which were available prior to both Dr. Bettmann's report and the final decision by the Secretary can hardly be considered new evidence. In fact, they are incorporated into the administrative record in this action. *See* Tr. 163. This information was thus available to the ALJ and the Appeals Council prior to their second decisions in this case, and they could at that time have directed Dr. Bettmann or any other physician to review the CAT scan results.[3] Moreover, the Secretary has also failed to provide this Court with any basis upon which to conclude that there is "good cause" for a remand in the instant action. In fact, the submissions filed by the Secretary utterly fail to address this issue. In the absence of such a showing, this Court is clearly prohibited by section 205(g) from ordering an evidentiary remand. *See Carter v. Schweiker, supra,* 649 F.2d at 942–943; *see also Chaney v. Schweiker,* 659 F.2d 676, 679 (5th Cir.1981). This is especially so where, as here, the Appeals Council specifically ordered the ALJ on remand to obtain the results of a CAT scan and Myelogram and to make this evidence "available to the consultant before the examination of the claimant." (Tr. 24). Inexplicably, the ALJ failed to follow the procedure dictated by the Appeals Council. Moreover, despite this failure by the ALJ, the Appeals Council reviewed the ALJ's second decision and had the opportunity at that time to direct the ALJ to correct his error. Nevertheless, the Appeals Council denied plaintiff's request for a review of the ALJ's decision and adopted that determination as the final decision of the Secretary.

The Second Circuit has recently noted that the prerequisites for an evidentiary remand promulgated by section 205(g) were "at least in part designed to limit federal court remands to the Secretary." *Aubeuf v. Schweiker, supra,* 649 F.2d at 115; *see also Carroll v. Secretary of HHS, supra,* 705 F.2d at 644; *Carter v. Schweiker, supra,* 649 F.2d at 942; S.Rep. No. 408, 96th Cong., 2d Sess. 58 (1979), *reprinted in* 1980 U.S.Code Cong. & Ad.News 1277, 1336. The present case is an appropriate one in which to effectuate "Congress' mandate to foreshorten the often painfully slow process by which disability determinations are made." *Carroll v. Secretary of HHS, supra,* 705 at 644. It has been more than three years since plaintiff applied for disability insurance benefits. During that time plaintiff's application has been the subject of two decisions by the ALJ and two by the Appeals Council, and despite overwhelming evidence that plaintiff was totally disabled, the Secretary has continued to deny his application for benefits. A remand and possibly a further appeal to this Court are certain to delay the benefits to which plaintiff is entitled on the present record even further. Such a result is unconscionable, and cannot be sanctioned by this Court.

## CONCLUSION

The Secretary's determination that plaintiff is not disabled because he could engage in sedentary work is not supported by substantial evidence and cannot stand. Accordingly, plaintiff's motion for summary judgment is granted, and the case is remanded to the Secretary for a calculation of benefits.

It is so ordered.

---

**3.** After reviewing Dr. Schwartzman's report regarding the CAT scan, the ALJ concluded merely that "[t]he computerized tomography showed no evidence of measurable lumbar stenosis and indicated that the claimant's primary problem was degenerative arthritis." (Tr. 17).