Dawson GIBBONS, Plaintiff,

v.

Otis R. BOWEN, Secretary of Health and Human Services, Defendant.

No. 85 Civ. 7773 (RJW).

United States District Court, S.D. New York.

Feb. 20, 1987.

Conrad A. Johnson, Attorney-in-Charge, The Legal Aid Society, New York City, for plaintiff; John C. Dubin, of counsel.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for defendant; Mark

S. Sochaczewsky, Sp. Asst. U.S. Atty., of counsel.

## OPINION

ROBERT J. WARD, District Judge.

Plaintiff Dawson Gibbons brings this action pursuant to sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act") as amended, 42 U.S.C. §§ 405(g), 1383(c)(3), seeking judicial review of a final decision by the defendant Secretary of Health and Human Services (the "Secretary" of "HHS") denying his application for Supplemental Security Income ("SSI") based on disability (hereinafter "disability benefits"). Despite a series of impairments that includes arthritis, traumatic amputation of three fingers on the left hand, and a pulmonary condition that prevents plaintiff from working near dust or fumes, the Secretary determined that Gibbons could return to his prior occupation as a locksmith. Plaintiff has moved for judgment on the pleadings under Rule 12(c), Fed.R.Civ.P. The Secretary has cross-moved to remand the case to the Social Security Administration ("SSA") for redetermination in light of an acknowledged error of law by the Administrative Law Judge. For the reasons to follow, the Court grants plaintiff's motion. The case is remanded solely for calculation of past-due benefits.

## BACKGROUND

Plaintiff was born on August 18, 1927. He completed the seventh grade. Gibbons lost his first, second and third fingers on his left hand in a machine accident in 1956. Prior to being laid off in 1982, Gibbons had worked as a locksmith for fifteen years. On June 19, 1984 plaintiff applied for disability benefits on the basis of asthma and the amputation of his fingers. After the Secretary denied his application initially and on reconsideration, plaintiff timely requested an administrative hearing. Administrative Law Judge Irwin L. Herzog (the "ALJ") held the hearing on February 14, 1985. John C. Dubin of the Legal Aid Society represented Gibbons at the hearing.

In a decision dated May 16, 1985, the ALJ found that Gibbons' complaints were not supported by the objective evidence and further that his impairments did not prevent him from returning to his past relevant work as a locksmith. When the Appeals Council denied plaintiff's request to review the ALJ's decision on August 6, 1985, that decision became the Secretary's final determination. Gibbons appealed to this Court and now seeks judgment on the pleadings. The Secretary has cross-moved to remand the case to the SSA for redetermination.

## DISCUSSION

A. Standards of Review.

The legal principles that govern the review of a final determination by the Secretary are well settled. Disability is defined in the Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The mere presence of an impairment is not disabling within the meaning of the Act. Rather, a person may be determined to be under a disability only if his or her impairment is of such severity that the claimant is not only unable to do his or her previous work, but cannot engage in any kind of substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The initial burden of proving disability is on the claimant. 42 U.S.C. § 423(d)(5); *see Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir.1982); *Carter v. Schweiker*, 649 F.2d 937, 940 (2d Cir.1981). The claimant satisfies this burden by making out a *prima facie* case, that is, by showing that his or her impairment prevents return to his or her prior employment. *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir.1980). The burden then shifts to the Secretary, who must produce evidence to show the existence of alternative substantial gainful work that

exists in the national economy and that the claimant could perform. *Id.*

■ In reaching a conclusion as to disability, both objective and subjective factors are to be considered. These include objective medical facts, diagnoses or medical opinions based on such facts, subjective evidence of pain or disability testified to by the claimant or other witnesses, and the claimant's education, background, age, and work experience. *Rivera v. Harris,* 623 F.2d 212, 216 (2d Cir.1980); *Bastien v. Califano,* 572 F.2d 908, 912 (2d Cir.1978). These factors need not be given equal weight.

Within the Second Circuit, the "treating physician" rule establishes the weight to be given the medical opinion of the physician who has treated the claimant relative to other medical evidence, including the opinions of other physicians.[1]

■ While a claimant's unsupported subjective estimation of his or her impairment does not alone suffice to establish disability, *Maisch v. Heckler,* 606 F.Supp. 982, 991 (S.D.N.Y.1985), when objective medical evidence in the record supports a claimant's complaint, the ALJ in weighing the balance must nonetheless give claimant's assertions great weight. *Rivera v. Schweiker,* 717 F.2d 719, 725 (2d Cir.1983); *Martinez v. Heckler,* 629 F.Supp. 247, 251 (E.D.N.Y.1986). Additionally, when the claimant testifies to a disabling condition after a long and continuous period of steady employment, his or her statements and the reasons given for no longer being able to work are entitled to "substantial credibility." *Rivera v. Schweiker, supra,* 717 F.2d at 725; *Carrillo v. Heckler,* 599 F.Supp. 1164, 1170 (S.D.N.Y.1984); *Maggio*

*v. Heckler,* 588 F.Supp. 1243, 1246 (W.D.N.Y.1984). After weighing objective medical evidence, the claimant's demeanor, and other indicia of credibility, the ALJ, in resolving conflicting evidence, may decide to discredit the claimant's subjective estimation of the degree of impairment. *Pascariello v. Heckler,* 621 F.Supp. 1032, 1035–36 (S.D.N.Y.1985).

■ The Secretary has the duty of making the determination of disability under the principles set forth above. It is not the function of this Court, which sits in the present context as a reviewing court, to determine *de novo* whether the claimant is disabled. Assuming the Secretary has applied proper legal principles, judicial review is limited to an assessment of whether the findings of fact are supported by substantial evidence. If they are so supported, they are conclusive. 42 U.S.C. § 405(g). *See Rivera v. Harris, supra,* 623 F.2d at 216; *Bastien v. Califano, supra,* 572 F.2d at 912. "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)). *See generally Parker v. Harris, supra,* 626 F.2d at 230–32. Where evidence has not been properly evaluated because of the application of an erroneous legal standard, however, the determination of the Secretary may not be upheld. *See Marcus v. Califano,* 615 F.2d 23, 28 (2d Cir.1979).

1. As most recently articulated,

> [t]he rule, which has been the law of this circuit for at least five years, provides that a treating physician's opinion on the subject of medical disability, i.e., diagnosis and nature and degree of impairment, is; (i) binding on the fact-finder unless contradicted by substantial evidence; and (ii) entitled to some extra weight because the treating physician is usually more familiar with a claimant's medical condition than are other physicians, although resolution of genuine conflicts between the

opinion of the treating physician, with its extra weight, and any substantial evidence to the contrary remains the responsibility of the fact-finder.

*Schisler v. Heckler,* 787 F.2d 76, 81 (2d Cir.1986) (citing *Bluvband v. Heckler,* 730 F.2d 886, 892–93 (2d Cir.1984)). The merits of this rule are not in issue. *Havas v. Bowen,* 804 F.2d 783, 785 (2d Cir.1986) (Secretary has made no attempt to appeal the rule to the Supreme Court and denies following policy of nonacquiescence); *Schisler v. Heckler, supra,* 787 F.2d at 83 (same).

### B. The Secretary's Determination.

The Secretary assessed whether plaintiff was suffering from a disability as defined under the Act by following a five step sequential evaluation process, of which the "severity regulations" are a part.[2] In evaluating Gibbons' application, the ALJ noted as step one that he had not engaged in substantial gainful activity since May 1982. (Tr. 8). Under steps two and three, the ALJ observed that plaintiffs multiple impairments "are not at the level of severity required to meet or equal an impairment listed in Appendix 1 of Part 4." (Tr. 10). The ALJ next determined as step four that in light of Gibbons' residual functional capacity, he could return to his past relevant work as a locksmith. As he succinctly stated:

> In evaluating the above and taking into consideration the claimant's testimony I find the claimant is restricted in sitting and standing for up to 1½ hours, lifting

and carrying up to 25 pounds and can walk up to 3 blocks. As for evironmental [sic] factors it is established that he should not be around fumes, gases or humidity.

The claimant's past work consisted of being a locksmith, and at this was required to lift and carry light ot [sic] medium objects.

Taking the above limitations into consideration, it is concluded that a decision on whether the claimant is disabled cannot be based on work activity or medical evidence alone. After assessing the claimant's remaining capacity for work and the physical and mental demands of the work he has done in the past the Administrative Law Judge concludes that the claimant has the residual functional capacity to do his past relevant work. (Tr. 10).[3]

The Secretary concedes that the ALJ applied an erroneous legal standard when he

---

2. The Second Circuit recently described the process mandated by the Secretary's regulations as follows:

> The first step in the sequential process is a decision whether the claimant is engaged in "substantial gainful activity." If so, benefits are denied. 20 C.F.R. §§ 404.1520(a), (b), 416.920(a), (b) (1983). If not, the second step is a decision whether the claimant's medical condition or impairment is "severe." If not, benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the impairment is "severe," the third step is a decision whether the claimant's impairments meet or equal the "Listing of Impairments" set forth in subpart P, app. 1, of the social security regulations, 20 C.F.R. §§ 404.1520(d), 416.920(d). These are impairments acknowledged by the Secretary to be of sufficient severity to preclude gainful employment. If a claimant's condition meets or equals the "listed" impairments, he or she is conclusively presumed to be disabled and entitled to benefits. If the claimant's impairments do not satisfy the "Listing of Impairments," the fourth step is assessment of the individual's "residual functional capacity," i.e., his capacity to engage in basic work activities, and a decision whether the claimant's residual functional capacity permits him to engage in his prior work. If the residual functional capacity is consistent with prior employment, benefits are denied. 20 C.F.R. §§ 404.1520(d), 416.920(e). If not, the fifth and final step is a decision whether a claimant, in light of his residual functional capacity, age, education, and work experience, has

the capacity to perform "alternative occupations available in the national economy." *Decker v. Harris*, 647 F.2d 291, 298 (2d Cir. 1981); 20 C.F.R. §§ 404.1520(f), 416.920(f). If not, benefits are awarded.

*Dixon v. Heckler*, 785 F.2d 1102 (2d Cir.1986) (quoting *City of New York v. Heckler*, 742 F.2d 729, 732 (2d Cir.1984), aff'd, — U.S. —, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986)).

The Supreme Court has granted certiorari to decide the legality of the regulations promulgated by the Secretary. *Yuckert v. Heckler*, 774 F.2d 1365 (9th Cir.1985), cert. granted, — U.S. —, 106 S.Ct. 1967, 90 L.Ed.2d 652 (1986). The regulations are currently the subject of litigation in another action in this district, *Dixon v. Heckler*, No. 83 Civ. 7001 (MEL) (S.D.N.Y.). In a decision dated June 22, 1984, Judge Lasker granted plaintiffs' motion for a preliminary injunction preventing the Secretary from enforcing the severity regulations. *Dixon v. Heckler*, 589 F.Supp. 1494 (S.D.N.Y.1984), aff'd, 785 F.2d 1102 (2d Cir.1986).

3. The ALJ reiterated these observations in specific, numbered findings.
> 3. Claimant's complaints are not supported by the objective evidence.
> 4. The claimant has the residual functional capacity to perform work-related activities except for work involving sitting and standing more than 1½ hours, lifting and carrying more [than] 25 pounds and exposure to environmental factors such as fumes, gases, and humidity (20 C.F.R. 416.945).

"incorrectly terminated the sequential evaluation at the fourth step when he found that plaintiff was capable of performing his past relevant work as a locksmith," and that he "should have determined whether plaintiff's pulminary [sic] condition would preclude his performing in the alleged [sic] dusty environment of a locksmith." The Secretary accordingly strongly urges the Court to remand to provide the SSA an opportunity "to have a consultative pulminary [sic] examination performed, and a residual functional capacity report prepared," to have "a vocational expert [ ] called upon to render an opinion with respect to plaintiff's employment opportunities," and to perform "[a]ny other desirable tests, such as a treadmill test." Brief for Defendant at 3.

### C. Disposition of the Case.

■ When Congress passed P.L. 96–265, 94 Stat. 458, on June 9, 1980, it amended section 205 of the Act. 42 U.S.C. § 405(g). The amendments to section 205(g) did not limit remands "in cases [in] which the Secretary has failed to provide a full and fair hearing, to make explicit findings or to have correctly app[lied] the law and regulations." H.R.Rep. No. 96–100, 96th Cong. 1st Sess. 13 (1979). Nonetheless the amendment was intended at least in part to limit federal court remands to the Secretary. *Carroll v. Secretary of HHS*, 705 F.2d 638, 644 (2d Cir.1983); *Carter v. Schweiker, supra*, 649 F.2d at 942; *Aubeuf v. Schweiker*, 649 F.2d 107, 115 (2d Cir. 1981); *see also* S.Rep. No. 96–408, 96th Cong., 2d Sess. 58 (1979), *reprinted in* [1980] U.S.Code Cong. Ad.News 1277, 1336.

Where there are no serious gaps or uncertainties in the record and persuasive proof indicates that the claimant is disabled, reversal and remand solely for calculation of benefits rather than for redetermination is appropriate. *See Carroll v. Secretary of HHS, supra*, 705 F.2d at 644. As Judge Lasker recently observed when presented with an analogous situation, if "plaintiff is correct ... that he is entitled to summary and final judgment ... for the relief demanded in the complaint, it follows that the granting of the Government's cross-motion to remand would serve no useful or constructive purpose." *Dixon v. Heckler*, 600 F.Supp. 141, 144 (S.D.N.Y. 1985); *see Carillo v. Heckler, supra*, 599 F.Supp. at 1167–68 (reversal and award of benefits at district court level appropriate when ALJ ignored court's instructions on previous remand and took no new evidence). The Court then must examine the merits of Gibbons' contentions that he is entitled to benefits to decide whether remand is appropriate.

Plaintiff argues that the record and the Secretary's own findings establish that he is disabled under three separate and distinct legal theories. First, he argues that he "is unquestionably disabled since the Secretary's own findings reveal that he lacks the capacity to perform even sedentary work." Plaintiff's Memorandum at 13. Next he contends that even assuming that he "could perform sedentary or even light work, he must still be found disabled under the medical vocational guidelines." *Id.* at 14–15. Finally he argues that the record contains "the uncontroverted and binding assessment of his treating physician [which] indicates that he has a combination of impairments which is equivalent in severity to a listed impairment." *Id.* at 16–18.

### 1. Residual Functional Capacity and Prior Relevant Work.

■ In assessing Gibbons' residual functional capacity, the ALJ found that he could perform work-related activities "except for work involving sitting and standing more than 1½ hours." (Tr. 11). The ALJ then credited Dr. Perlman's assessment that plaintiff could alternatively sit or stand only two hours at one time. (Tr.

---

5. The claimant's past relevant work as a locksmith did not require the performance of the work-related activities precluded by the above limitation (20 C.F.R. 416.965).

6. The claimant's impairments do not prevent the claimant from performing his past relevant work.
(Tr. 11).

124–26). The ALJ also found as an environmental restriction that plaintiff should not work around fumes, gases, or humidity. Dr. Perlman's report, and Gibbons own testimony, (Tr. 32–33), indicate that he should avoid dust as well. Even Dr. Jasmin's non-examining consultative report noted that Gibbons should work in a dustless environment. (Tr. 56). It is clear then that Gibbons could not return to his prior relevant work not only because that job involves a dusty workplace but also because performing that job requires continuous periods of sitting or standing well in excess of the one and one half hours of which the ALJ found Gibbons capable. The Court, therefore, must reverse the ALJ's decision that Gibbons could return to his prior work as a locksmith.

### 2. The "Grids."

Once the disability evaluation process reaches the fifth step, the burden shifts to the Secretary to prove that the claimant has the residual capacity to perform alternative occupations available in the national economy. *Graham v. Heckler*, 580 F.Supp. 1238, 1240 (S.D.N.Y.1984). To determine whether alternative, suitable occupations exist in the national economy, the Act directs the Secretary to consider the four factors, physical ability, age, education, and work experience, that Congress has identified as being relevant to this determination. 42 U.S.C. § 423(d)(2)(A); *see* 20 C.F.R. § 404.1520(f). To rationalize the determination of whether jobs appropriate for an individual claimant exist in the national economy, the Secretary in 1978 promulgated medical-vocational guidelines, commonly referred to as the "grids."

> [The regulations] consist of a matrix of the four factors identified by Congress—physical ability, age, education, and work experience—and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy. Where a claimant's qualifications correspond to the job requirements identified by a rule, the guidelines direct a conclusion as to whether work exists that the claimant could perform. If such work exists, the claimant is not considered disabled.

*Heckler v. Campbell*, 461 U.S. 458, 461–62, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983).[4]

While the regulations direct a conclusion as to classes of claimants on the general question of whether jobs exist in the national economy, the Secretary must first assess each individual's abilities on the basis of historical facts established by evidence and testimony adduced at a hearing.

---

4. The physical ability factor is based on the claimant's ability to perform sedentary, light, medium or heavy work as defined in the *Dictionary of Occupational Titles*.

> Physical exertion requirements.
> To determine the physical exertion requirements of work in the national economy, we classify jobs as "sedentary," "light," "medium," "heavy," and "very heavy." These terms have the same meaning as they have in the Dictionary of Occupational Titles, published by the Department of Labor. In making disability determinations under this subpart, we use the following definitions:
> (a) *Sedentary Work.* Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

> (b) *Light Work.* Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.
> (c) *Medium Work.* Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.
> 20 C.F.R. § 404.1567.

*Id.* at 467–68, 103 S.Ct. at 1957. Claimants may challenge both the Secretary's factual findings on the matrix factors and the necessary question of whether the grids even apply to their case. Having made the preliminary findings, the Secretary is not to apply the grids mechanically in borderline situations.[5]

### 3. Applying the Grids.[6]

 At the time Gibbons first applied for benefits on June 19, 1984 he lacked the

---

**5.** Although the Supreme Court has specifically upheld use of the grids so that the Secretary need not take vocational testimony on the existence of specific jobs at each claimant's hearing, the decision carefully noted that the Secretary's own regulations permit automatic application of the conclusion disability or nondisability only when the rules accurately describe a claimant's abilities and limitations. *Heckler v. Campbell, supra,* 461 U.S. at 462 n. 5, 103 S.Ct. at 1954 n. 5. In those instances where a claimant's combination of impairments cannot be matched with a square on the grid, such as when a clamant is afflicted as well with non-exertional or environmental limitations, the Secretary must give "full consideration ... to all the relevant facts in the case in accordance with the definitions and discussions of each factor in the appropriate sections of the regulations, which will provide insight into the adjudicative weight to be accorded each factor." 20 C.F.R. § 404, subpt. P., app. 2 § 200.00(e)(2). When a claimant has presented both strength and nonexertional limitations, the Secretary is to. decide "whether a finding of disabled may be possible based on strength limitations alone." *Id.* If the strength limitations alone are not disabling, the Secretary may use the grid as a "framework" for his analysis, but he cannot rely upon the grid as the sole basis for a conclusion that suitable jobs exist in the national economy. *Id.; see Graham v. Heckler,* 580 F.Supp. 1238, 1241 (S.D.N.Y. 1984).

**6.** The Secretary places mistaken reliance on *Johnson v. Heckler,* 741 F.2d 948, 952 (7th Cir. 1984), for the proposition that the Court would exceed the scope of its judicial review by applying the grids on review. The circuit panel in Johnson reversed the district court because the magistrate had, on the basis of the administrative record, determined that the claimant possessed transferable skills. As the Court noted, by the Secretary's regulations "Johnson would be disabled if her skills were not transferable; conversely she would not be disabled if they were transferable." *Id.* at 953. The magistrate then had made a factual determination on a difficult and disputed issue without giving claimant the opportunity, guaranteed by the Secretary's regulations, to present and rebut evidence about the transferability of her previous work skills. Even were the decision in that case binding on this Court, it would not seem to preclude a court from applying the grids in favor of a claimant on the basis of factual findings either made by the ALJ or those that are undisputed from the record.

Within the Second Circuit, numerous decisions have reversed the Secretary's factual determinations and found the claimant disabled on the basis of evidence in the record. *See Rivera v. Heckler,* 618 F.Supp. 1173 (S.D.N.Y.1985) (reversing the Secretary's determination that claimant could perform sedentary work and finding plaintiff disabled on basis of treating physician's report and lack of any substantial, contradictory evidence); *O'Grady v. Heckler,* 588 F.Supp. 850 (E.D.N.Y.1984) (reversing Secretary's determination and reinstating benefits where court found that Secretary's finding that plaintiff is capable of sedentary work "is not supported by even a scintilla of evidence"); *Keppler v. Heckler,* 587 F.Supp. 1319 (S.D.N.Y.1984) (reversing a finding that claimant is capable of sedentary work when uncontradicted evidence in the record established that plaintiff was disabled); *see also Yucaipi v. Bowen,* No. 85 Civ. 1795 slip op. (S.D.N.Y. 1986) [Available on WESTLAW, DCTU database] (reversing the ALJ's finding, premised on a consultative examination, that claimant could perform sedentary work when treating physician's report found him disabled); *cf. Hirsch v. Heckler,* 613 F.Supp. 267 (S.D.N.Y.1985) (remanding to the Secretary when the ALJ did not state specific reasons for accepting the report of the consultative examiner over that of the treating physician).

The conditions under which a remand may be ordered are set out in section 205(g) of the Act. That section permits an evidentiary remand only when plaintiff demonstrates (1) the existence of new and material information; and (2) good cause for failure to produce the evidence in earlier proceedings. *Keppler v. Heckler,* 587 F.Supp. 1319, 1323–24 (S.D.N.Y.1984) (citing *Carroll v. Secretary of HHS, supra,* 705 F.2d at 643–44). In this instance, the remand requested by the Secretary is unwarranted and, in view of the Court's decision, would serve no useful purpose.

The record and the ALJ's factual findings cover all four matrix factors necessary to make a determination based on the grid and the Secretary's regulations. Since the Court can decide this case at step five based on Gibbons' strength limitations alone, neither a further consultative pulmonary examination nor a treadmill test is necessary.

Furthermore, the Secretary has failed to meet either aspect of the statutory burden to order a remand. Plaintiff's pulmonary impairment is not a new aspect of this case. The submissions filed by the Secretary do not provide any good

ability to perform the full range of work described as sedentary, not only because he cannot sit or stand continuously for more than one and one-half hours, but also because he lacks bimanual dexterity and must work in places free from dust, fumes, or humidity. He was, therefore, disabled within the meaning of the Act on the basis of the ALJ's findings alone. *See Martinez v. Heckler, supra,* 629 F.Supp. 247.

■ Even were the Court to assume *arguendo* that Gibbons could perform the full range of work described as sedentary or light without any environmental restrictions, he would still be found disabled. For purposes of the Secretary's regulations Gibbons is of advanced age. 20 C.F.R. § 404 subpt. P. app. 2 at 200.00. Because he had completed only the seventh grade, his education is described as limited or less. His work as a locksmith was semi-skilled, and those skills are non-transferrable. *See id.* at 201.00(f). Rules 201.02 and 202.02 direct the finding that a claimant with those qualifications is to be found disabled.

## CONCLUSION

The Secretary's determination that Gibbons could return to his former work as a locksmith is reversed both as a matter of law and as not supported by substantial evidence. The ALJ's factual findings and other facts in the record direct the conclusion under the Secretary's regulations that Gibbons is disabled within the meaning of the Act. Accordingly the Court grants plaintiff's motion for judgment on the pleadings. Defendants' cross-motion to remand the case for redetermination is denied. The case is remanded to calculate and pay plaintiff past-due benefits. The instant action hereby is dismissed, subject to being reopened by either party within a

cause for his failure to order further tests of Gibbons while this matter was pending before

reasonable time following proceedings by the Secretary.

It is so ordered.

the Administration. *See Keppler v. Heckler, supra* 587 F.Supp. at 1324.