**Debra A. FAZIO and Dean Fazio, Plaintiffs-Appellants,**

**v.**

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendant-Appellee.**

**No. 83–3098.**

United States Court of Appeals, Sixth Circuit.

Argued Feb. 23, 1984.

Decided Dec. 19, 1984.

Wellford, Circuit Judge, dissented and filed opinion.

James Mitchell Brown, P.A., Marcia Margolius (argued), Cleveland, Ohio, for plaintiffs-appellants.

Dale F. Kainski, Joan Leese Lowes, Assistant Regional Attorney, Dept. of Health and Human Services, Chicago, Ill. (argued), Kathleen A. Sutula, Cleveland, Ohio, for defendant-appellee.

Before EDWARDS and WELLFORD, Circuit Judges, and PECK, Senior Circuit Judge.

GEORGE CLIFTON EDWARDS, Jr., Circuit Judge.

This appeal involves denial of an application for supplemental social security income benefits under provisions applicable to minors below the age of 18. Subchapter XVI of the Social Security Act, 42 U.S.C. §§ 1381–1383 (1976 & Supp. V 1981). It has been filed by the mother of an infant

who at four months was found to be suffering from sleep apnea or sudden death syndrome.

The applicable statute provides as follows:

(3)(A) An individual shall be considered to be disabled for purposes of this subchapter if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months (*or, in the case of a child under the age of 18, if he suffers from any medically determinable physical or mental impairment of comparable severity*).

42 U.S.C. § 1382c(a)(3)(A) (1976) (emphasis added).

It does not appear that the usual dispute over whether or not the applicant can perform substantial gainful employment is involved under this statute. It does appear, however, that there are two preconditions for award of benefits: 1) proof that the disability lasted for more than a year, and 2) comparable severity to similar conditions medically recognized as disabling as to adult claimants. 20 C.F.R. §§ 416.906, 416.923 (1983).

This case was filed in pro per by this infant's mother. It was heard before a Social Security Administrative Law Judge (ALJ). The infant's mother appeared without counsel, representing herself and the child. Neither of the preconditions referred to above were judged by the ALJ to have been met in the record developed at this hearing. Benefits were therefore denied by the ALJ, the Appeals Council, and subsequently on appeal by a U.S. Magistrate before whom the parties agreed to have the appeal heard.

On appeal to the District Court, the claimant, now represented by counsel, sought to remand the case to take additional evidence. Specifically, a letter was submitted from the baby's doctor, attesting that the apnea had persisted beyond the Act's one year duration requirement.

**Durational Requirement**

On this record, the first question presented is whether or not this court should remand for supplementation of the record and redetermination by the ALJ and the Appeals Council, since the case was heard before the child was one year old and there was no conclusive medical evidence submitted as to the comparable severity of the illness.

On appeal, legal counsel for the mother and child filed a letter on the duration of the child's problem. Dr. Fleming's letter, dated January 27, 1982, reads as follows:

Dean Fazio has been followed by me since a few weeks of age for apnea episodes. Dean was placed on an apnea monitor at an early age. He continues to have apnea episodes in the 20–30 second range, which requires stimulation to resolve. For that reason he continues to remain on a monitor, and is considered in the high risk category. He will remain on this monitor till he is at least 2 years old, and will be reevaluated at that time.

Generally, a remand for receipt of additional evidence is permitted only where the evidence sought to be introduced is material, and there is good cause for the failure to introduce such evidence in a prior proceeding. 42 U.S.C. § 405(g); *Willis v. Secretary of Health and Human Services*, 727 F.2d 551, 554 (6th Cir.1984).

Neither party disputes the materiality of the duration evidence sought to be introduced, and we think its relevance self-evident. The new evidence bears directly and substantially on the matter in dispute, inasmuch as the ALJ held in part that the infant did not meet the Act's one year durational requirement. *Ward v. Schweicker*, 686 F.2d 762, 764 (9th Cir. 1982).

There was also good cause, beyond the mother's obvious lack of legal knowledge, for claimant's failure to introduce the evidence below. The ALJ hearing occurred before the child was one year of age. It

was not until after the infant's first birthday that it was obvious his illness was of a duration sufficient to meet the Act's requirement. Dr. Fleming's letter, submitted after the child's first birthday, confirmed the continuing nature of his illness, the continuing severity of risk, and a protracted course of treatment. "Good cause" exists because this evidence was simply not available at the ALJ hearing. *Wilson v. Secretary of Health and Human Services*, 733 F.2d 1181, 1182–83 (6th Cir.1984).

Dr. Fleming's letter, as quoted above, offers evidence previously missing in this case that the baby's medical impairment would continue beyond the durational requirement of one year. Such evidence, however, cannot appropriately be accepted on appeal.

For this reason, we remand this case to the District court for remand to the Secretary for the admission of additional evidence and redetermination.

### The Comparability Issue

As pointed out earlier, the second statutory requirement in this infant's case is that there be proof he suffers from a medically determinable physical impairment of comparable severity. 20 C.F.R. § 416.923 (1983). *See* 20 C.F.R. Part 404, Subpart P, Appendix 1. In this regard, the Secretary "will consider the impairment most like [a claimant's] impairment to decide whether [the claimant's] impairment is medically equal." 20 C.F.R. § 416.926(a). The child's mother, who sought to represent him before the ALJ, presented no proof on the comparability or equivalence score. The record, however, does contain discussion of this issue by Dr. Richard Watts, the medical advisor, under the questioning of the ALJ:

> With adequate treatment, would this child be expected to improve? Yes, child grows out of condition as nervous system matures.

> It would seem evident at the present time that there certainly in Dean Fazio's case an up and down kind of course. [sic] Things were bad in March, better in April, much better in May, June and July, and then considerably worse, culminating with his most recent hospitalization.

> So, as Mrs. Fazio testified a minute ago, the general implication is that this is an automatic nervous system which is immature, lacking the current balance in controls. And, that with the passage of time, providing the infant survives, these controls will be incorporated into the function of the automated nervous system.

> So far in Dean Fazio's case, this has not occurred.

Q Okay. What I want to ask you, doctor, is the medical evidence that you have observed, do you have an opinion satisfactory to yourself that this evidence demonstrated the claimant, the little child, has a physical or mental impairment that results in anatomical, physiological or psychological abnormalities which are demonstratable by medically acceptable clinical and laboratory diagnostic techniques?

Do you have—just a minute.

Q All right.

A Yes, I do.

Q What is your opinion, doctor?

A Well, Judge Denning, the child obviously has a severe impairment in terms of functioning of the automated nervous system and the function of the respiratory center.

If the question has to do with looking at disability determinations, I would not be able to find one that I could point to that would be correlated with this particular abnormality.

The abnormality, of course, is a version of the sleep apnea (phonetic) condition, which Mrs. Fazio also referred to. It does occur in adults and indeed does. That, also, is not covered in the disability listings that I've been presented with.

But, I think it seems evident in looking at this data, for instance, that the child— that the child's life is at risk on a great many occasions.

And, fortunately, all of these occasions have been averted by the quick action of the parents.

Q *Let me ask you this, doctor. Is this disease—an adult disease, do you know of any cases where it lasted into their adult life of an individual?*

A *No, but it does occur in adults. But, it usually occurs in adults who have airway obstruction for one reason or another. Either they have disease of the cartilage of the larnyx and trachea, or, you know, we also see it in people who are extremely obese, for instance, or people who develop nasal and oral abnormalities, so that there is an obstruction—a physical obstruction to the airway.*

*And, of course, during the waking hours, they're doing some voluntary ventilation. But, when they go to sleep, they have to rely upon the function of the automated nervous system.*

*In adults in most cases, as I said a minute ago and as Mrs. Fazio testified, this is a relatively recently recognized abnormality in adults and in children.* (Emphasis added).

But, in answer to your question, I don't—I personally, and I'm certainly not an expert in this field, don't know of any cases where it has lasted from infancy clear through into adulthood.

There may be a reason for that. It may be, like my younger brother, these people died as infants. And, obviously, therefor did not live long enough to manifest it as adults.

Under additional questioning by the ALJ, Dr. Watts asserted that the condition suffered by Dean Fazio was "on the medical frontier" but then added that he did not believe that it could be said with certainty to be likely to last for the entire durational requirement of one year. The ALJ then took the case under advisement and subsequently entered an opinion denying benefits.

We now hold that the "comparable severity" issue should likewise be remanded for rehearing. Although the Secretary's regulations require such a determination, based on consideration of the listed impairment "most like" the claimant's, and the italicized portions of Dr. Watts' testimony do tend to establish that there are listed conditions comparable to sleep apnea, there has been no exploration of the comparable severity of any listed conditions. *See* 20 C.F.R. § 416.926(a). For example, this record does not contain any mention of such common and sudden life-threatening disease conditions in adults as inoperable aneurisms, a variety of heart diseases, including but not limited to arrhythmia, or the similarities, if any, between sleep apnea in infants and various respiratory and neurologic impairments in youths and adults, such as asthma, cystic fibrosis, episodic asthma, seizure disorders, motor dysfunctions, severe speech impediments, Parkinson's disease, spinal lesions, and Lou Gehrig's disease. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, Parts A and B.

For the reasons outlined in this opinion, we remand this appeal to the District Court to remand to the Secretary for rehearing on both issues discussed above.

WELLFORD, Circuit Judge, dissenting.

I respectfully dissent. Plaintiff's application for benefits is based upon a novel and unusual condition of her infant son. It was considered and rejected as a basis for Social Security benefits by a state agency, by the ALJ after a *de novo* hearing in a sensitive and thorough decision, by the Appeals Council, and by a Magistrate. No one can fail to have sympathy for the mother who has rendered extraordinary care and attention to her child who was diagnosed as suffering, at the time of the hearing, from sleep apnea. The question before this court, however, is whether plaintiff has carried the burden of proving entitlement to benefits under the applicable law and regulations. Plaintiff described at the hearing the disorder and her son's diagnosis:

It's a hard disease to even determine what causes it. They don't know what causes it. They've had it narrowed down

to a few things with gastric stomach spasms (phonetic) or premature automatic nervous systems. And, in Dean's case they've diagnosed him as a premature automatic nervous system .... There's no danger while he's awake ... he only gets into trouble when he's asleep .... We thought Dean was improving. We thought he was doing fairly well .... It's a problem that they—they do grow out of the problem. Okay. But, they don't know how long it takes.

They speculate on how long it takes, but they can't tell you ....

After hearing from plaintiff who described several harrowing episodes in which her child stopped breathing in his sleep, the ALJ considered the medical evidence offered and called one expert to give testimony. Dr. Richard Watts, a board certified internist and cardiologist, testified about the condition and the medical records available as to infant Fazio. (Dr. Watts had a particular interest in the case since his younger brother had been a sudden infant death victim). He was asked the following questions and gave the following responses:

Q. What I want to ask you, doctor, is the medical evidence that you have observed, do you have an opinion satisfactory to yourself that this evidence demonstrated the claimant, the little child, has a physical or mental impairment that results in anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques?

\*　　\*　　\*　　\*　　\*　　\*

A. Well, Judge Denning, the child obviously has a severe impairment in terms of functioning of the automated nervous system and the function of the respiratory center.

If the question has to do with looking at disability determinations, I would not be able to find one that I could point to that would be correlated with this particular abnormality.

The abnormality, of course, is a version of the sleep apnea (phonetic) condition, which Mrs. Fazio also referred to. It does occur in adults and indeed does. That, also, is not covered in the disability listings that I've been presented with.

\*　　\*　　\*　　\*　　\*　　\*

Q. Doctor, the reason why I asked that question in order for this child to be eligible under the program—well, I'll read the regulation that this covers:

A child under age 18, which this child is, will be found to be disabled ... if he has a medically determinable, physical or mental impairment of comparable severity to which qualifies an individual age 18 or over, disability shall be deemed to be of comparable severity and to exist under the regulations if the child is not engaging in substantial, gainful activity, and if his impairment or impairments meet the duration requirement of 12 months listed in the Appendix of sub-part I.

Now, this is not, as I understand you, is not listed in the Appendix in sub-part I?

A. That's right.

Q. And, then it says if the child was 18. We have nobody 18 with this. This is a children—infant—

A. That's right.

Q. —problem. So, I'm not deciding the legal questions surrounding this.

But, I want to get from you whether or not we have—whether or not that this—they haven't written the law to cover this problem?

A. I think that's right. Our problem, one of them—we have several problems—but one of our problems is that we're at a medical frontier. And, obviously disability listings and other things like that must follow in the wake of the medical frontier.

But, another problem that we have, also, which you touched on a minute ago, and that is duration. If the duration has to be 12 months, the child is first of all, not 12 months old. And, it is—has lasted or is expected to last for 12 months. I

think at this point it's premature to say that it's expected to last for 12 months. We hope it doesn't last for 12 months. It may, but I think in August for a child born in October of the previous year, it—it would be premature to say that this is guaranteed to last for 12 months.

Treating physicians, Michaels and Fleming, who made reports in April and May of 1981, indicated that the child would grow out of the sleep apnea condition as his nervous system matured and did not indicate that his impairment met, or was the equivalent of, disability listings. There was, therefore, *no medical testimony* before the ALJ which established an impairment or disability within the meaning of the law or regulations.

The findings and the decision of the ALJ, hereafter set out, were based on the record before him. No substantial evidence to the contrary was presented by the date of his decision on September 30, 1981.

After careful consideration of the entire record, the Administrative Law Judge makes the following findings:

1. The claimant experienced the onset of episodic "sleep apnea" in March 1981, at the age of 4 months.

2. The claimant's condition requires him to be continuously monitored by his family and by a specialized machine.

3. The claimant's condition causes intermittent, unpredictable life-threatening episodes.

4. The claimant's condition has not lasted for 12 continuous months and cannot reasonably be expected, as of the date of hearing, to last for 12 continuous months from the date of onset.

5. The claimant does not have a medically determinable impairment of comparable severity to that which qualifies an individual age 18 or over.

6. The claimant's documented condition is not listed in Part A or Part B of the Secretary's Listing of Impairments.

7. The claimant's documented condition is not the medical equivalent of any impairment or combination of impairments listed in either Part A or Part B of the Secretary's Listing of Impairments.

8. The claimant's documented condition does not meet the requirements for entitlement to Supplemental Security Income child's benefits based on disability, as stated by section 416.915 of Social Security Regulation No. 16.

It is the decision of the Administrative Law Judge that, based upon the application filed on March 31, 1981, the claimant is not entitled to Supplemental Security Income child's benefits based on disability under Title XVI of the Social Security Act, as amended.

The effort by plaintiff's counsel "belatedly to deal with the missing proofs" should not be a basis for a remand in this case merely because Dr. Fleming [1] "submitted a letter showing that Dean [Fazio] had not outgrown his impairment" as of January 27, 1982.

I agree with the Magistrate's opinion in this case that "claimant has offered no explanation as to why the information in the letter from claimant's treating physician was not gathered and incorporated into a prior proceeding" or in a request for rehearing. *See Watts v. Harris,* 614 F.2d 515 (5th Cir.), *cert. denied,* 449 U.S. 863, 101 S.Ct. 168, 66 L.Ed.2d 80 (1980); 42 U.S.C. § 405(g). Our court, moreover, in a recent per curiam opinion involving a present and former Chief Judge, had occasion to refer to 42 U.S.C. § 405(g), amended in 1980 (P.L. 96–265, § 307, 94 Stat. 458), stating that

a reviewing court "may at any time order additional evidence to be taken before the Secretary *but only* upon a show-

---

**1.** The Magistrate found in the course of a particularly careful and articulate 14 page memorandum opinion that Dr. Fleming's May, 1981 report indicated that "the sleep apnea was mild 'in severity and probably developmental;'" that

"most our [patients] become asymptomatic with time," and that he did not "believe child would be on monitor more than [sic] several additional months."

ing that there is new evidence which is material *and* that there is *good cause* for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g) (emphasis added).

We have examined the legislative history of the 1980 amendment to 42 U.S.C. § 405(g) and it clearly indicates the amendment was designed to limit the ability of a reviewing federal court to remand the case to the Secretary.

*Willis v. Secretary of Health and Human Services,* 727 F.2d 551, 553 (6th Cir.1984). The *Willis* decision, moreover, quotes from S.Rep. No. 96–408, 96th Cong., 2d Sess. 58, *reprinted in* 1980 U.S.Code Cong. & Ad. News 1277, 1336–37:

> The [1980] bill would continue the provision of present law which gives the court discretionary authority to remand cases to the Secretary, but adds the requirement that remand for the purpose of taking new evidence be limited to cases in which there is a showing that there is new evidence which is material and *that there was good cause for failure to incorporate it into the record in a prior proceeding.*

727 F.2d at 553–54 (emphasis added).

It seems clear to me that the *Willis* decision was correct in concluding where, as here, there was no motion made before the ALJ or the Secretary that the record be kept open for additional evidence, the reviewing court should limit its discretion in remanding for further consideration.

> It is clear from our reading of the legislative history that this provision was enacted, at least in part, to limit the discretion of federal judges to remand for reconsideration of new evidence. *Accord*

*Dorsey v. Heckler,* 702 F.2d 597, 604 (5th Cir.1983); *Ward v. Schweiker,* 686 F.2d 762, 764 (9th Cir.1982) *citing Carter v. Schweiker,* 649 F.2d 937, 942 (2d Cir. 1981).

*Willis,* 727 F.2d at 554.

This is the very kind of case in which a limited discretion, properly exercised, would not effect a remand, especially as to matters not even attempted to be covered by the appellant herself or her counsel.[2]

I dissent not only to the remand herein ordered, but also to the overly broad nature of the remand in this case. I would Affirm the decision below.

---

**2.** The majority attempts to establish good cause in this case by arguing that because the ALJ hearing took place before the child's first birthday, no evidence could have been submitted so as to satisfy the 12 month durational requirement. The majority, however, loses sight of what the appropriate regulation says. That regulation states:

> Unless your impairment is expected to result in death, *it must have lasted or must be expected to last* for a continuous period of at least 12 months.

20 C.F.R. § 416.909 (emphasis added). Thus, as in any other social security case, the fact that the disability has not yet lasted a year at the time of the hearing does not defeat the claim. All that the claimant need do is present evidence that the disability will "be expected to last" for at least 12 months. Plaintiff failed in this burden, and offers no reason for her failure to present such evidence.