**Cynthia CORNELIOUS, on Behalf of Quiana GOREE, a minor, Plaintiff,**

**v.**

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.**

**No. CIV–86–184C.**

United States District Court,
W.D. New York.

March 13, 1987.

Neighborhood Legal Services, Inc. (Alan B. Block, of counsel), Buffalo, N.Y., for plaintiff.

Roger P. Williams, U.S. Atty. (Jacqueline Stover, Sp. Asst. U.S. Atty., of counsel), Buffalo, N.Y., for defendant.

CURTIN, Chief Judge.

Cynthia Cornelious, on behalf of Quiana Goree, a minor, appeals from the final decision of the Secretary denying her application for disability benefits.

At the time of her hearing before the Administrative Law Judge [ALJ], Quiana Goree [plaintiff] was nine months old. Her alleged disability is the congenital absence of the cricopharyngeus muscle and a gastro-esophageal reflux. Since this muscle is a major component of the act of swallowing, plaintiff is unable to swallow normally and is fed entirely through a gastrostomy tube. The ALJ found that plaintiff's impairment does not meet the requirements of Appendix I of the regulations because she does not exhibit malnutrition. He also determined that her impairment is not medically equal to an impairment listed in Appendix I. As a result, the Secretary held that the substantial evidence of the record demonstrates that plaintiff is not disabled. 20 C.F.R. § 416.924.

Plaintiff concedes that her condition fails to meet any one of the disabling conditions set forth in the Appendix I Listings. Her condition is not marked by malnutrition, as Listing § 105.03 (esophageal obstruction) requires. Nevertheless, plaintiff argues that her disability is established because her condition is medically equal in severity to a listed impairment. 20 C.F.R. § 416.-924(b)(2). Plaintiff says that the Secretary failed to give adequate consideration to medical evidence of a severe condition in his evaluation of medical equivalence. Finally, plaintiff argues that the Secretary's childhood disability criteria are invalid in that they hold child claimants to a more stringent standard than adults in their failure to consider non-medical, yet "material evidence" in determining childhood disabilities.

The following are the facts of this case. Plaintiff was transferred to Children's Hospital two days after birth, after becoming cyanotic, with slight bradycardia during feedings. She was reported to gulp her bottle and occasionally gag on secretions (Tr., p. 75). While at Children's Hospital, various diagnostic tests were performed. Heart, lung, abdominal, and neurological findings were within normal limits for her age (Tr., p. 75). Esophagrams revealed tracheal aspiration. A fluoroscopy of the airway revealed a hypermobile, elongated epiglottis that caused repeated bouts of aspiration during feeding (Tr., pp. 78–80). On October 2, 1984, plaintiff underwent a laryngoscopy, bronchoscopy, and esophagoscopy. The post-operative diagnosis was chronic aspiration, secondary to an incomplete cricopharyngeus muscle (Tr., p. 91). A gastro-esophageal scintiscan performed on October 5 showed gastro-esophageal reflux, with some aspiration (Tr., p. 82). Plaintiff was placed on NG feeds and gained weight, but due to a continued GE reflux, a feeding gastrostomy was placed on October 12 (Tr., pp. 93–94). A repeat gastro-esophageal reflux scintiscan performed after placement of the feeding gastrostomy showed episodes of gastro-esophageal reflux early and late in the study, but no evidence of aspiration (Tr., p. 84). Due to continued reflux, plaintiff was placed on Bethanechol medication. Plaintiff was discharged October 27 on an apnea and bradycardia monitor. Bethanechol was prescribed twice a day. The parents were instructed in CPR and home monitor care.

Plaintiff's treating physician, Dr. Udwadia, examined plaintiff at two months of age and reported that she suffered from the absence of the cricopharyngeus muscle and a gastro-esophageal reflux. As a result, he stated that she cannot swallow feedings and is at a great risk of severe pulmonary aspiration. He also noted that plaintiff was fed entirely through a gastrostomy tube, takes medication three times a day, was gaining weight adequately, and was otherwise normal (Tr., pp. 104–05). He examined plaintiff again in April and July of 1985. His findings were essentially the same. In the July report, when plaintiff was eleven months old, he stated that it was possible that plaintiff would gradually be able to swallow normally, although he was unable to say when this

might occur. He indicated that plaintiff could swallow ice cream and water slowly (Tr., p. 141). He restated that plaintiff was otherwise normal.

Developmental testing performed on plaintiff at three months of age at the Cantalician Center for Learning showed a moderate delay in the motor domain. Her mental score was above normal (Tr., p. 127). In January, 1985, plaintiff underwent a physical/occupational therapy evaluation. She was diagnosed with developmental delay caused by the interference of the GT tube (Tr., p. 129). In May, 1985, the physical therapy evaluation stated that plaintiff demonstrated age-appropriate gross and fine motor development and should be discharged from an active therapy program. Continued evaluation and parental education were recommended, however, to monitor development, suggest equipment, and prevent motor delays while plaintiff was on the GE tube. In a letter dated June 21, 1985, Sister Raphael Marie, the Executive Director of the Cantalician Center for Learning, stated that plaintiff was demonstrating a significant delay in oral-motor development due to the presence of the GT tube, noting that "unlike other children at her age she is unable to participate in self-feeding."

The statements of reviewing physicians and medical advisors who did not examine plaintiff have not been considered.

The testimony of plaintiff's mother, Cynthia Cornelious, on May 5, 1985, is consistent with the medical and vocational records. She testified that plaintiff is unable to ingest liquids or solids at all without the tube and that she pours everything into the tube through a syringe. Ms. Cornelious also alleges that her child cannot be left unattended because of the danger of choking and that she has been trained in CPR in case of an emergency (Tr., pp. 35–36). Ms. Cornelious states that she gives medicine to the child to prevent any ingested milk from backing up (Tr., p. 41). She also requires the use of a portable monitor machine which sounds an alarm when plaintiff stops breathing. She uses this machine when plaintiff sleeps and takes it with her if she leaves the house for any length of time (Tr., pp. 37, 41). Developmentally, Ms. Cornelious testified that plaintiff is unable to crawl because of the tube in her stomach, but is able to stand with support, hold her head up, roll from back to side, grasp toys, and respond to her name (Tr., pp. 39–40, 42, 44). Finally, Ms. Cornelious states that it is difficult for plaintiff to breath outside when it is windy, and she catches colds easily (Tr., p. 40).

■ Upon review, the ALJ's decision that plaintiff does not meet the conditions set forth in Appendix I is supported by substantial evidence. Her digestive impairment does not cause the required finding of malnutrition (Tr., pp. 54, 104, 141, 123).

■ However, the ALJ failed to properly assess the medical evidence in reaching conclusions regarding medical equivalence; his decision lacks any elaboration on his finding that plaintiff's impairment did not equal the listed impairment. *Thompson for Thompson v. Secretary of Health*, 559 F.Supp. 548 (E.D.N.Y.1983). Instead, the ALJ relies on a brief report from a medical advisor, Dr. Chandrasekhar, who never examined plaintiff. In the report, Dr. Chandrasekhar simply restated plaintiff's diagnosis and concludes that after a review of the medical records, plaintiff does not meet the Listings (Tr., p. 143). He reiterates that plaintiff is entirely normal otherwise, as previously stated by Dr. Udwadia.

Aside from the inappropriateness of relying upon the opinions of non-examining physicians, the ALJ's report is absent any exploration of the comparable severity of plaintiff's condition to any listed condition. The regulations provide that a plaintiff will be found to be disabled if he or she has a medically determinable physical or mental impairment which compares in severity to any impairment which would make an adult (a person age 18 or over) disabled. This requirement is met when the impairment is determined to be medically equal to a listed impairment. 42 U.S.C. § 1382c(a)(3)(A), implemented through 20 C.F.R. § 416.923 and 20 C.F.R. § 416.926. In addition, Social Security Ruling 83–19 states that a claim-

ant can establish medical equivalence when the record demonstrates:

> a listed impairment for which one or more of the specified medical finding is missing but for which other medical findings of equal or greater clinical significance and relating to the same impairment are present in the medical evidence.

Plaintiff suffers from a severe digestive-related problem. Medical evidence in the record shows that: a) she has never been able to ingest food or liquid directly through her mouth without the tube (Tr., p. 35); b) it is unknown if normal ingestion will ever occur (Tr., p. 141); c) she requires constant supervision by those trained in CPR and requires the use of a breathing monitor (Tr., pp. 36–37); d) she displays a significant delay in oral-motor development due to the presence of the GT tube (Tr., pp. 134, 140). Plaintiff's abnormality renders her unable to ingest food normally; her inability to swallow prevents her from performing the initial step in the digestive process.

The above-mentioned medical evidence illustrates that although plaintiff lacks the specified medical finding of malnutrition in accordance with SS Ruling 83–19, she does exhibit findings of equal or greater clinical significance. Further, the medical evidence listed above at subsections (a)–(d) are signs and symptoms of a digestive disorder which must be considered when making an equivalency determination. 20 C.F.R. § 416.926.

In light of the existence of these clinically significant medical findings, and because of the serious error committed by the Secretary and the issue of medical equivalence, the court must reverse the decision of the Secretary. *Fazio v. Heckler,* 750 F.2d 541 (6th Cir.1984).

Because I so rule, I decline to rule at this time on plaintiff's arguments regarding the validity of the Secretary's rules as they relate to children. To summarize, the decision of the Secretary is reversed in all respects. In addition, given the facts of this case, I find that plaintiff's attorney is entitled to fees pursuant to the Equal Access to Justice Act [EAJA], 28 U.S.C.

§ 2412. *See Compton v. Secretary,* CIV–83–1402C (dated March 18 and April 8, 1986).

So ordered.