**Oscar TROUPE, Plaintiff,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.**

**No. 83 Civ. 7476 (WCC).**

United States District Court, S.D. New York.

Sept. 12, 1985.

The Legal Aid Society, New York City, for plaintiff; Bernard C. Durham, Virginia C. Duncombe, Judith Post, of counsel.

Rudolph W. Giuliani, U.S. Atty. for the S.D. of N.Y., New York City, for defendant; Jane E. Bloom, Asst. U.S. Atty., Annette H. Blum, Regional Atty., Timothy Jefferson, Asst. Regional Atty., Dept. of Health and Human Services, of counsel.

### OPINION AND ORDER

WILLIAM C. CONNER, District Judge:

Plaintiff Oscar Troupe ("Troupe" or "the Claimant") brought this action under Sections 205(g) and 1631(c)(3) of the Social Security Act ("the Act"), as amended, 42 U.S.C. §§ 405(g), 1383(c)(3) (1982), seeking review of a final determination of the Secretary of Health and Human Services ("the Secretary") that plaintiff is not disabled as defined by the Act, and therefore is not entitled to disability insurance or Supplemental Security Income ("SSI") benefits.

The Secretary has moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure ("F.R. Civ.P."). I have reviewed the exhibits and testimony received by the Secretary, and I have concluded, for the reasons stated below, that the Secretary's determination is not supported by substantial evidence. Accordingly, the Secretary's motion is denied, the Secretary's decision denying plaintiff disability insurance and SSI benefits is reversed, and the case is remanded to the Secretary for a computation of benefits.

*Background*

Plaintiff is a 39-year-old man with an eighth-grade education (Tr. at 43).[1] He has worked as a machine operator, a construction worker, and a moving man (Tr. at 43–46). Plaintiff stopped working in 1973 when he injured his back while lifting a piano (Tr. at 63).

**1.** All citations to the transcript refer to the pages as numbered for the complete record on appeal.

Following the injury to his back, plaintiff escalated his use of drugs, which he had begun three years earlier (Tr. at 125), in order to relieve his leg and back pains (Tr. at 47). In October 1975, plaintiff entered Beth Israel Hospital for detoxification (Tr. at 126), and shortly thereafter he enrolled in a methadone treatment program at the Beth Israel Medical Center (Tr. at 148). When plaintiff's drug use ceased during his hospitalization, his leg and back pains increased (Tr. at 64), and he began receiving treatment for his injury. Plaintiff's condition has been variously described as "herniated disk" (Tr. at 159-60, 173-74), "L5, S1 radiculopathy" (Tr. at 176-77, 179), and "herniated nucleus pulposus" (Tr. at 186).

On January 4, 1978, plaintiff filed an application for disability insurance and SSI benefits (Tr. at 84-87). Plaintiff's application was denied initially (Tr. at 88-89) and on reconsideration (Tr. at 93-94).

Plaintiff requested a *de novo* hearing of his application, and such a hearing was held before Administrative Law Judge ("ALJ") Howard Lawrence who concluded in a decision issued on November 7, 1979, that plaintiff was not disabled within the meaning of the Act (Tr. at 24-30). The Appeals Council declined to review that decision (Tr. at 22).

On April 14, 1980, plaintiff commenced an action in this Court for review of the administrative proceedings. The Social Security Administration was unable to provide a transcript of the proceedings below, and, accordingly, by Order dated March 13, 1981, I remanded the case to the Secretary for a new hearing (Tr. at 21).

ALJ Lawrence conducted another hearing, and this time concluded that plaintiff was disabled from October 1, 1975 through July 30, 1980, and was entitled to disability benefits for the period commencing October 1, 1975 and ending September 30, 1980, and to SSI benefits for the period commencing January 4, 1978 [2] and ending Sep-

tember 30, 1980 (Tr. at 14-15). However, the Appeals Council, in a decision issued January 29, 1982, rejected the ALJ's conclusion that the plaintiff had been disabled for a limited period of time, and held that the plaintiff had not been disabled at any time through the date of its decision (Tr. at 168-70).

Plaintiff again sought review in this Court. Both parties moved for judgment on the pleadings, and, in an Opinion and Order issued July 9, 1982, I again remanded the action to the Secretary for further proceedings, including the consideration of additional medical evidence.

On remand, the Appeals Council affirmed its earlier decision (Tr. at 165-66A), which accordingly became the final decision of the Secretary. Plaintiff has once again sought review of the Secretary's decision. As noted above, the Secretary has now moved for judgment on the pleadings.

### Applicable Legal Standards and Scope of Review

■ The legal principles that govern the Court's decision on the instant motion are well settled. A claimant is entitled to disability benefits under the Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (1982). The mere presence of an impairment is not disabling within the meaning of the Act. Rather, the Secretary will find a claimant disabled only if the claimant's

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regard-

---

**2.** Although the ALJ's recommended decision specified that plaintiff was eligible for SSI benefits "commencing with the filing of his application therefor, on June 4, 1978" (Tr. at 15), it is apparent that he intended January 4, 1978, the date on which plaintiff filed his application (*see, e.g.,* Tr. at 84 (plaintiff's application); *id.* at 255 (ALJ finding no. 1) ).

less of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A) (Supp. I 1983).

The applicable regulations promulgated by the Secretary set forth a five-step sequence to be utilized in evaluating disability claims. 20 C.F.R. §§ 404.1520, 416.920 (1985). In *Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982) (per curiam), the Court of Appeals for the Second Circuit summarized this procedure as follows:

First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform.

■ The claimant bears the burden of proof as to the first four steps, while the Secretary bears the burden of proof as to the final one. *Id.* Once the claimant has established a *prima facie* case by showing that his impairment prevents his return to his prior employment, the burden shifts to the Secretary, who must produce evidence to show the existence of alternative substantial gainful work in the economy which the claimant could perform, considering not only his physical capacity, but also his age, education, experience, and training. *Parker v. Harris,* 626 F.2d 225, 231 (2d Cir. 1980).

The regulations divide the Secretary's inquiry on the final step into two stages. First, the Secretary must assess the claimant's present job qualifications, considering such factors as physical ability, age, education, and work experience. 42 U.S.C. § 423(d)(2)(A) (Supp. I 1983); 20 C.F.R. § 404.1520(f) (1985). Second, the Secretary must consider whether there are jobs in the economy that a person with the claimant's qualifications could perform. 20 C.F.R. §§ 404.1520(f), 404.1566–404.1569 (1985).

The regulations contain a matrix of the four factors identified by Congress—physical ability, age, education, and work experience—which enable the Secretary to determine generally whether appropriate alternative jobs exist in the economy. Thus, there is no need for testimony from vocational experts in each case, and the Secretary need not specify the alternative jobs available. "Where a claimant's qualifications correspond to the job requirements identified by a rule, the guidelines direct a conclusion as to whether work exists that the claimant could perform. If such work exists, the claimant is not considered disabled." *Heckler v. Campbell,* 461 U.S. 458, 461–62, 103 S.Ct. 1952, 1955, 76 L.Ed.2d 66 (1983) (footnote omitted).

■ In reaching a conclusion on these issues, the trier of fact should consider both objective and subjective factors. These include (1) objective medical facts, (2) diagnoses or medical opinions based on such facts, (3) subjective testimony by the claimant as to pain or disability, and (4) background data such as the claimant's age, education, and previous work experience. *Parker v. Harris,* 626 F.2d at 231; *Bastien v. Califano,* 572 F.2d 908, 912 (2d Cir.1978).

■ In reviewing the Secretary's determination, it is not the function of this Court

to determine *de novo* whether the claimant is disabled. The Secretary's decision may only be set aside if it is based upon legal error or not supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3) (1982); *Aubeuf v. Schweiker,* 649 F.2d 107, 112 (2d Cir.1981). Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938) ).

██ The substantial evidence test applies not only to findings of basic evidentiary facts, but also to inferences and conclusions drawn from such facts. *Beane v. Richardson,* 457 F.2d 758, 759 (9th Cir.), *cert. denied,* 409 U.S. 859, 93 S.Ct. 144, 34 L.Ed.2d 105 (1972); *Rodriguez v. Califano,* 431 F.Supp. 421, 423 (S.D.N.Y.1977). It is the function of the Secretary, and not a reviewing court, to pass on the credibility of witnesses and to resolve material conflicts in the testimony. *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

*Discussion*

Plaintiff advances two principal arguments in opposition to the Secretary's motion. First, plaintiff argues that he has an impairment listed in Appendix 1 of the regulations and that the Secretary was required to find him disabled without considering vocational factors. Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Judgment on the Pleadings at 33–35 [hereinafter cited as "Plaintiff's Memorandum"]. Second, plaintiff argues that the Secretary erred in concluding that plaintiff retained the residual functional capacity to engage in sedentary work

and in applying the so-called "grid" rules in Appendix 2 of the regulations. *Id.* at 35–45.

In support of his first argument, the plaintiff points to extensive clinical evidence in the record of the type contemplated by the regulations for proof of spinal disorders such as a herniated nucleus pulposus. *Id.* at 9–20. While I find much merit in this argument, I decline to reach it because, as discussed below, the evidence is overwhelming that the plaintiff is incapable of sedentary work.

██ In support of his second argument, plaintiff maintains that the record is devoid of evidence sufficient to conclude that he is capable of sedentary work. I agree. Indeed, the unrefuted medical evidence was overwhelmingly to the contrary.

The physical exertional requirements of jobs involving sedentary work are defined by the Secretary in accordance with the criteria set forth in the *Dictionary of Occupational Titles* published by the Department of Labor. 20 C.F.R. § 404.1567 (1985). "The *Dictionary of Occupational Titles,* which is a generally accepted guide in gauging employment capability in [disability] cases, states that sedentary work implies a capacity to sit for *at least* 6 hours in an eight hour work day." *Mazzella v. Secretary of U.S. Dep't of Health & Human Servs.,* 588 F.Supp. 603, 607 (S.D.N.Y 1984) (emphasis in original); *Keppler v. Heckler,* 587 F.Supp. 1319, 1322 (S.D.N.Y.1984) (emphasis in original); *see also Ferraris v. Heckler,* 728 F.2d 582, 587 & n. 3 (2d Cir.1984).

The relevant medical evidence in the instant case is contained in the reports of several doctors, including plaintiff's treating physicians and two consulting physicians, Drs. F. Hochberg and E. Balinberg, who examined plaintiff on behalf of the Social Security Administration.[3] Plaintiff's

---

**3.** Plaintiff was examined by three consulting orthopedists at the request of the Bureau of Disability Determinations ("the BDD").

Dr. Ernest Abeles found that plaintiff's history was "consistent with a herniated disc syndrome" and stated that plaintiff "should not do any

heavy work involving any heavy lifting" (Tr. at 129). Dr. Abeles made no finding with respect to plaintiff's ability to sit, stand, or walk for extended periods of time.

Dr. Fred Hochberg opined that plaintiff had "chronic left sciatic syndrome" and estimated

treating physicians noted in numerous medical reports between 1976 and 1979 that plaintiff's symptoms were aggravated by sitting (*e.g.,* Tr. at 156, 179, 180, 186, 198, 204–05). Only Drs. Hochberg and Balinberg made explicit estimates of how long plaintiff could sit. Dr. Hockberg estimated plaintiff could sit for periods of two to three hours in an eight-hour workday (Tr. at 131). Dr. Balinberg estimated that plaintiff could sit for periods from two to four to six hours (Tr. at 153).[4]

■ Unless controverted by substantial evidence to the contrary, the expert opinions of these consulting physicians, like those of plaintiff's treating physicians, are binding on the Secretary. *Flores v. Department of Health, Educ. & Welfare,* 465 F.Supp. 317, 321 (S.D.N.Y.1978). It is readily apparent from the consulting physicians' reports that plaintiff normally will be able to sit for far less than six hours in an eight-hour workday. Rarely, if ever, will he be able to sit for the six or more hours required by the regulations for sedentary work.

Nonetheless, the Appeals Council concluded that these reports indicated that the plaintiff "had the residual functional capacity to do substantial ... sitting in an 8 hour work day," and constituted "substantial evidence to support a finding adverse to the [plaintiff]" (Tr. at 169). This conclusion is patently contrary to the uncontroverted opinions of the consulting doctors.

■ The Secretary's failure to accept the uncontradicted conclusions of the treating and consulting physicians and to heed the physical exertional requirements for sedentary work contained in the regulations and reinforced by case law deprives her decision of the requisite support by substantial evidence. Her decision must therefore be reversed.

It is necessary to address briefly the period for which the plaintiff is entitled to benefits. In his recommended decision, the ALJ awarded the plaintiff a "closed period of disability" beginning October 1, 1975 and ending July 30, 1980. The ALJ based his finding that the plaintiff was not entitled to benefits before October 1975 on an examination of the plaintiff's medical records (Tr. at 13), several of which indicated a history of pain dating back only to the end of 1975 (*e.g.,* Tr. at 159, 161). The ALJ based his finding that the plaintiff was not entitled to benefits after July 30, 1980 on the same report of Dr. Balinberg relied upon by the Appeals Council (Tr. at 12). From that report, the ALJ concluded that the plaintiff was able to perform sedentary work beginning July 30, 1980 and that his disability therefore ceased on that date (Tr. at 13). The Appeals Council implicitly adopted these findings when it concluded that the plaintiff was not disabled "at any time through the date of [its] decision" (Tr. at 170).

---

that plaintiff "could stand for periods of up to one hour; sit for periods of 2–3 hours; [and] walk distances of 8–10 blocks" (Tr. at 131). He placed no restrictions on plaintiff's grasping or manipulation. Plaintiff's bending was limited to two to three times per hour, and his lifting was limited to weights under 10 pounds (*Id.*). Dr. Edmond Balinberg concluded that plaintiff was suffering from "low back syndrome" and "left sciatica syndrome" (Tr. at 151). He estimated that, in an eight-hour workday, plaintiff's capacity to sit was from two to four to six hours, to stand was from two to four hours, and to walk was from two to four hours. *See infra* note 4.

4. Dr. Balinberg completed a BDD supplied "Residual Functional Capacity Evaluation" form (Tr. at 153). The instructions for completing the form directed Dr. Balinberg to indicate the claimant's capacity for various activities by circling the appropriate numeral on a scale running from zero to eight hours in increments of two hours. With regard to plaintiff's capacity to sit in an eight-hour workday, Dr. Balinberg circled the numerals "two," "four," *and* "six," and drew arrows from "two" to "four" and from "four" to "six." Similarly, with regard to plaintiff's capacity to stand and walk in an eight-hour workday, Dr. Balinberg circled the numerals "two" *and* "four," and drew arrows from "two" to "four." In his recommended decision, the ALJ found that Dr. Balinberg's notations indicated that, in an eight-hour workday, he estimated plaintiff could "sit for periods varying from two to four to six hours," "stand from two to four hours," and "walk two to four hours" (Tr. at 12).

 A review of the record indicates that the ALJ's finding concerning the onset of the plaintiff's disability is supported by substantial evidence and should be upheld. While there is some evidence that plaintiff was experiencing pain prior to 1975 (*e.g.*, Tr. at 47–48), this does not necessarily deprive the ALJ's finding of the requisite support by substantial evidence since the Secretary, and not this Court, is to pass on credibility and to resolve conflicts in testimony. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Thus, the Secretary's determination may be conclusive even in instances where the Court's independent analysis of the evidence may differ from that of the Secretary. *Reading v. Mathews*, 542 F.2d 993, 997 (7th Cir.1976).

The ALJ's finding is amply supported by the records he examined and by many of the supplemental medical records submitted by the plaintiff to the Appeals Council following remand (*e.g.*, Tr. at 176, 179, 180, 185–86, 188, 198, 218). In addition, the plaintiff himself testified at the supplemental hearing before ALJ Lawrence that he had tried to return to work several months after his injury but was not rehired (Tr. at 63–64). Thus, the plaintiff is entitled to benefits only after October 1, 1975.[5]

I cannot, however, uphold the ALJ's finding that the plaintiff's disability ceased on July 30, 1980. The ALJ's conclusion from Dr. Balinberg's report that the plaintiff was capable of performing sedentary work as of that date must be rejected for the reasons discussed above in reversing the decision of the Appeals Council, *see supra* pp. 253–54. Therefore the plaintiff is entitled to an open period of disability commencing October 1, 1975.

*Conclusion*

For the foregoing reasons, I conclude that the Secretary's determination is not supported by substantial evidence and cannot stand. Accordingly, defendant's motion for judgment on the pleadings is denied. Judgment is entered in favor of plaintiff awarding him disability insurance and SSI benefits beginning October 1, 1975. The decision of the Secretary is reversed and this case is remanded to her solely for the computation of benefits.

SO ORDERED.

---

5. The same result would follow under the plaintiff's theory that he has an impairment listed in Appendix 1 of the regulations, *see supra* p. 253. Proof of a § 1.05C herniated disc impairment requires the existence of pain "persisting for at least 3 months despite prescribed therapy and expected to last 12 months." 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.05C (1985). Since there is substantial evidence to support the ALJ's finding that plaintiff first experienced pain in October 1975, the Court also would be required to uphold a finding that the plaintiff did not have a listed impairment before then.