Angel RIVERA, Plaintiff,

v.

Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.

No. 84 Civ. 8666 (WCC).

United States District Court, S.D. New York.

Sept. 24, 1985.

Davison F. Moore, Poughkeepsie, N.Y., for plaintiff.

Rudolph W. Giuliani, U.S. Atty. for S.D. N.Y., New York City, for defendant; Rosemarie E. Matera, Sp. Asst. U.S. Atty., New York City, of counsel.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge:

Plaintiff Angel Rivera ("Rivera") brought this action pursuant to §§ 205(g) and 1631(c)(3) of the Social Security Act ("the Act"), as amended, 42 U.S.C. §§ 405(g), 1383(c) (1982), seeking review of a final determination of the Secretary of Health and Human Services ("the Secretary") that he is not "disabled" within the meaning of the Act, and therefore is not entitled to disability insurance benefits. This matter is now before the Court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. I have reviewed the testimony and exhibits received by the Secretary, and I have concluded, for the reasons stated below, that the Secretary failed to apply proper legal standards and made findings that are not supported by substantial evidence. Accordingly, Rivera's motion is granted, the Secretary's determination that Rivera is not disabled is reversed, and this matter is remanded to the Social Security Administration ("SSA") for a computation of benefits.

*Background*

Rivera is a 41-year-old man with an eighth-grade education (Tr. at 29).[1] After completing military service, he held a variety of jobs, working as a carpenter for seven years, as trucker's helper for five years, and finally, as a heavy equipment operator for the New York State Department of

---

1. All citations to the transcript refer to the pages as numbered for the complete record on appeal.

Transportation (Tr. at 31–33). On December 21, 1981, Rivera sustained an injury to his lower back in an on-the-job accident and thereafter suffered lower back problems that prevented him from working steadily (Tr. at 33–34). On July 7, 1983, Rivera's back "gave in" while he was working and, after that incident, he stopped working altogether (Tr. at 34). His condition has been diagnosed as a herniated disc (Tr. at 84, 117), which causes pain and numbness in the lower back and in both legs (Tr. at 37–38).

On October 4, 1983, Rivera filed an application for disability benefits with the SSA, citing his herniated disc as the cause of his disability (Tr. at 65). The SSA denied his application, both initially (Tr. at 71–74), and on reconsideration (Tr. at 81). Rivera requested a *de novo* hearing of his application (Tr. at 109), and on April 18, 1984, such a hearing was held before Administrative Law Judge Arthur Newbauer ("the ALJ").

Rivera was the only person who testified at the hearing. He stated that lower back problems prevented him from working, explaining that he suffered from constant pain in his back, which he said extended to his legs when he walked "a lot" (Tr. at 34, 37–38). He stated that his lower back pain worsened when he sat continuously or when he stood for more than twenty minutes at a time (Tr. at 39–40). He testified that in order to prevent this increase in pain, he constantly had to shift his position, alternating between sitting, standing, walking, and lying down (Tr. at 40–41). When asked if there was anything he could do to lessen the pain, he replied that there was not, other than wearing a back brace (Tr. at 38).

Rivera testified that his daily activities included painting ceramics, watching television, and listening to the radio. He stated that he had difficulty getting dressed and that he was unable to do minor household chores such as carrying groceries, gar-

dening, or other tasks that require bending (Tr. at 86, 107, 103).

In addition to Rivera's testimony, the ALJ received into evidence a number of medical reports from Dr. Michael H. Kamalian, Rivera's treating physician, Dr. G. Michael Croker, Rivera's chiropractor, and two unidentified consulting physicians retained by the SSA. In reports dated October 26, 1983, and November 10, 1983, Dr. Kamalian diagnosed Rivera's condition as a herniated disc in his lower back. In his report of October 26, 1983, he described Rivera as "totally disabled" (Tr. at 110), and in his report of November 10, 1983, he opined that Rivera had a "chronic low back disorder" and a "permanent partial disability" (Tr. at 118). Dr. Kamalian issued an updated report on February 13, 1984, in which he stated that Rivera had acute paraspinal muscle spasm with radiculopathy (Tr. at 120). He concluded that Rivera was "still disabled at [that] time" (*Id.*).

In response to a request from the SSA, Dr. Kamalian assessed Rivera's residual functional capacity in a report dated April 16, 1984. He indicated that Rivera could occasionally lift up to five pounds, could do no substantial carrying at all, could sit no more than four hours in the course of an eight-hour day, could not stand for even one hour in the course of an eight-hour day, and could not walk more than two hours in the course of an eight-hour day (Tr. at 129). Dr. Kamalian stated that Rivera could reach frequently and bend or squat occasionally, but could not crawl or climb (*Id.*). In a report issued one week later, April 23, 1984, Dr. Kamalian reiterated that Rivera's working capabilities were limited, but suggested that Rivera "could ... be rehabilitated to do a sedentary type of job" (Tr. at 131).

Dr. G. Michael Croker, a chiropractor who treated the claimant once or twice a month from January 1982 to January 1984 (Tr. at 36, 111), provided additional analytical reports.[2] Dr. Croker diagnosed

---

**2.** Although the Secretary correctly notes that a chiropractor is not an acceptable medical source, *see* 20 C.F.R. § 404.1513 (1985), the reg-

ulations do make clear that a chiropractor's reports may be considered in determining

Rivera's condition as severe lumbosacral myofuscitis accompanied with L–5 disc syndrome and compression of the lumbosacral plexus (Tr. at 111). He indicated that Rivera's symptoms included severe pain in the lower spine with bilateral radiation to the legs, acroparathesia, a guarded and antalgic gait, and increased pain when Rivera moved or coughed (*Id.*). He stated that prolonged standing and sitting aggravated Rivera's pain, and he advised against "any and all lifting" (*Id.*).

Two consulting physicians retained by the SSA provided the remainder of the medical reports. Neither of them examined Rivera, but instead based their conclusions on a review of his medical file. Both doctors reiterated the essential findings of Dr. Kamalian, likewise diagnosing Rivera's condition as a herniated disc (Tr. at 122, 124). However, the consultants disagreed with Dr. Kamalian's evaluation of Rivera's residual functional capacity. One of the consultants found Rivera capable of frequently lifting or carrying objects weighing 25 pounds, and occasionally lifting or carrying objects of up to 50 pounds (Tr. at 121). He also found Rivera capable of walking or standing six hours in an eight-hour day, and sitting six hours in an eight-hour day (*Id.*). Finally, he stated that Rivera could frequently climb, balance, stoop, kneel, crouch, and crawl (*Id.*). He concluded that Rivera retained the ability to perform a range of medium level work activities (Tr. at 122). The second consulting physician was in agreement with the first consultant's estimate of Rivera's ability to lift, carry, sit, and stand or walk, but found that Rivera could climb, balance, stoop, kneel, crouch, and crawl only occasionally (Tr. at 123).

The ALJ issued a decision on July 23, 1984. He found that Rivera's impairment prevented him from returning to his previous employment, but concluded that Rivera did not suffer from a physical impairment so severe as to prevent him from performing at least sedentary work (Tr. at 9). In support of his finding, the ALJ stated that

Dr. Kamalian, Rivera's treating physician, had indicated that Rivera had the capacity to perform sedentary work (*Id.*), and he noted that the two consulting physicians had found that Rivera had the residual functional capacity to perform medium level work (*Id.*). The ALJ also stated that in view of the "medical evidence" and his observation of Rivera's demeanor at the hearing, he found Rivera's testimony regarding his restricted ability to sit or stand to be "exaggerated" (*Id.,*). For these reasons, he determined that Rivera was not disabled within the meaning of the Social Security Act.

On November 6, 1984, the Appeals Council denied Rivera's request that it review the ALJ's decision, thereby making that decision the final determination of the Secretary. This appeal followed.

*Applicable Legal Standards and Scope of Review*

▮ A claimant is considered disabled and entitled to disability benefits under the Social Security Act if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A) (1982). The mere presence of an impairment is not disabling within the meaning of the Act. Rather, the Secretary will find a claimant disabled only if the claimant's

physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

Id. § 423(d)(2)(A) (Supp. I 1983).

▮ The applicable regulations promulgated by the Secretary set forth a five-

whether a claimant is disabled. *See id.* § 404.- 1516.

step sequence to be utilized in evaluating disability claims. 20 C.F.R. §§ 404.1520, 416.920 (1985). The Court of Appeals for the Second Circuit summarized this procedure in *Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982) (per curiam), as follows:

First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform.

The claimant bears the burden of proof as to the first four of these steps. If he meets the burden of proving that he cannot return to his past work, the Secretary assumes the burden of proving the last step—that there is other work that the claimant can perform. *Id.* If the claimant can perform other work, he is considered not disabled.

█ In reaching a conclusion on these issues, the trier of fact should consider (1) objective medical facts, diagnoses, or medical opinions, (2) subjective testimony by the claimant as to pain or disability, and (3) background data such as the claimant's age, education, and previous work experience. *Parker v. Harris,* 626 F.2d 225, 231 (2d Cir.1980); *Bastien v. Califano,* 572

F.2d 908, 912 (2d Cir.1978). Under § 205(g) of the Act, the Secretary's factual findings are conclusive if supported by substantial evidence, which has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938).

█ The substantial evidence test applies not only to findings of basic evidentiary facts, but also to inferences and conclusions drawn from such facts. *Beane v. Richardson,* 457 F.2d 758, 759 (9th Cir.), *cert. denied,* 409 U.S. 859, 93 S.Ct. 144, 34 L.Ed.2d 105 (1972); *Rodriguez v. Califano,* 431 F.Supp. 421, 423 (S.D.N.Y.1977). It is the function of the Secretary, and not the reviewing court, to pass on the credibility of witnesses and to resolve material conflicts in the testimony. *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). In short, this Court is not to decide the case *de novo.* Obviously, however, the Court is not required to accept the Secretary's determination if the Secretary failed to apply proper legal principles or failed appropriately to consider evidence critical to a just determination of the claimant's application. *Parker,* 626 F.2d at 231.

### Discussion

█ I have reviewed the record in light of the standards set forth above, and I conclude that the Secretary's determination that Rivera is not disabled must be reversed because she failed to apply proper legal principles and made findings that are not supported by substantial evidence. But before discussing that issue, I note that the ALJ did conform his analysis to the five-step procedure set out in *Berry.* The ALJ correctly found (1) that Rivera was not currently engaged in substantial gainful activity; (2) that his impairment was severe; (3) that his impairment was not among those listed in Appendix 1 of the

regulations; and (4) that Rivera could not perform his former work as a heavy equipment operator. Once the ALJ determined that Rivera was unable to return to his former work, the burden shifted to the Secretary to prove that Rivera could perform some other work that exists in the national economy. *Berry,* 675 F.2d at 467. In this case, the ALJ found that Rivera was not disabled because he could perform sedentary work. It is that determination which is under review here, and which I find is in error under the standards set out above.

The principal source of the ALJ's error was his gross mischaracterization of Dr. Kamalian's findings with respect to Rivera's residual functional capacity. In support of his conclusion that Rivera was capable of performing sedentary work, the ALJ stated that "[t]he orthopedic surgeon," referring to Dr. Kamalian, "advises that the claimant has the capacity to do sedentary work" (Tr. at 9). The ALJ was apparently referring to Dr. Kamalian's report of April 23, 1984 in which he stated that Rivera's "working capabilities are limited," but that *"[h]e could ... be rehabilitated* to do a sedentary type of job" (Tr. at 131). However, read in context, it is clear that Dr. Kamalian was indicating that at the time of his report, Rivera was unable to perform sedentary work, but *at some future time,* he should be able to do so. He did not state that Rivera was currently capable of performing sedentary work.

■■■ Indeed, in a report dated April 16, 1984, just one week earlier, Dr. Kamalian expressed clearly his opinion that Rivera did not have the functional capacity to do sedentary work. He indicated that Rivera could not stand for even one hour in an eight-hour day, that he could not walk more than two hours in an eight-hour day, and that he could not sit for more than four hours in an eight-hour day (Tr. at 129). Since a claimant must be able to do at least some occasional standing and walking and must be able to sit for at least six hours in an eight-hour day in order to be considered capable of performing sedentary work, *see*

*Ferraris v. Heckler,* 728 F.2d 582, 587 & n. 3 (2d Cir.1984); *Mazzella v. Secretary of U.S. Dep't of Health & Human Servs.,* 588 F.Supp. 603, 607 (S.D.N.Y.1984); *Keppler v. Heckler,* 587 F.Supp. 1319, 1322 (S.D.N.Y.1984), it is difficult to understand how the ALJ could have interpreted Dr. Kamalian's findings as an indication that Rivera could perform sedentary work. Instead, Dr. Kamalian's reports are clear evidence that Rivera is unable to engage in any substantial gainful activity. Moreover, as the findings of a treating physician, Dr. Kamalian's conclusions are binding on the Secretary absent substantial evidence to the contrary. *Bastien v. Califano,* 572 F.2d at 912; *Gold v. Secretary of Health, Educ. & Welfare,* 463 F.2d 38, 42 (2d Cir. 1972).

No substantial evidence exists in the record that could justify disregarding Dr. Kamalian's findings. The ALJ noted that the two consulting physicians had found that Rivera could sit and stand for six hours in an eight-hour day, and that in their view, he was capable of performing medium level work (Tr. at 8). However,

[t]he law is clear that the opinion of a physician who has never treated or examined the claimant is entitled to little weight, and generally cannot serve as substantial evidence supporting a finding of nondisability when the record contains detailed contradictory opinions by physicians who have examined the claimant.

*Ceglia v. Schweiker,* 566 F.Supp. 118, 124 (E.D.N.Y.1983); *see also Allen v. Weinberger,* 552 F.2d 781 (7th Cir.1977); *Landess v. Weinberger,* 490 F.2d 1187 (8th Cir.1974); *Browne v. Richardson,* 468 F.2d 1003 (1st Cir.1972); *Gudlis v. Califano,* 452 F.Supp. 401 (N.D.Ill.1978); *Tingling v. Secretary of Health & Human Servs.,* 575 F.Supp. 905, 909 (S.D.N.Y.1983).

■■■ The ALJ also noted that he found Rivera's testimony that he was unable to sit or stand for prolonged periods "to be exaggerated" (Tr. at 9). However, while the ALJ purported to base this conclusion on the "medical evidence" and his own observation of Rivera's demeanor at the

hearing, Rivera's complaints were entirely consistent with Dr. Kamalian's medical findings with respect to Rivera's residual functional capacity. Accordingly, the ALJ's assessment of Rivera's demeanor is entitled to little weight, *see Carroll v. Secretary of Health & Human Servs.,* 705 F.2d 638, 643 (2d Cir.1983), and does not amount to substantial evidence on which he could disregard Dr. Kamalian's expert opinion that Rivera was unable to perform sedentary work.

Therefore, for all of these reasons, I conclude that the Secretary failed to apply the proper legal principles in reviewing Rivera's application, and that her determination that Rivera is capable of performing sedentary work is not supported by substantial evidence. Since the reports submitted by Rivera's treating physician clearly indicate that Rivera is disabled within the meaning of the Social Security Act, I hereby reverse the Secretary's determination, direct the Clerk of the Court to enter judgment in favor of plaintiff, and remand this matter to the SSA for the computation of benefits.

SO ORDERED.